AURELIA VESPER, RESPONDENT, v. WILLIAM E. ASHTON, APPELLANT.—
118 S. W. (2d) 84.

Kansas City Court of Appeals.   March 7, 1938.

*Howell & Jacobs, Charles M. Howell, Jr.* and *Scott R. Timmons* for respondent.

*Cowgill & Popham* and *John F. Cook* for appellant.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of the plaintiff in the sum of $5000. Defendant has appealed.

The facts show that plaintiff was injured on the afternoon of September 13, 1934, while riding as a guest of the defendant in his automobile. Defendant and his wife were returning from a trip to the country, where they had purchased some grapes. Plaintiff was seated in the front seat of the car with defendant. The wife was in the rear seat. They were returning to the city by way of Highway No. 50, having turned north into Benton Boulevard, and were proceeding in a northwesterly direction on that street uphill, traveling about three feet from the east curb of the boulevard. The car was proceeding at the rate of about thirty miles per hour, when suddenly it turned west and went directly west across the pavement much faster than it had been going, the speed increasing to about fifty miles per hour.

The car went over the west curb and over the parkway and stopped with the right side of the car, where plaintiff was sitting, against a tree twenty feet west of the curb. After the car struck the tree it stopped, with its front end projecting west beyond the tree. The boulevard was paved with macadam. It had been raining but the rain had ceased. The pavement was damp. However, there was no water, mud or oil on it. The boulevard was about forty feet wide between curbs. The curbing on either side was "square" curbing, that is perpendicular.

There was a parkway on the west side of the boulevard thirty or forty feet wide with trees growing thereon. Beyond the trees there was a deep hollow. There was no other car in the vicinity when the one in question started across the boulevard.

Plaintiff was the sole witness as to what happened at the time, there being no testimony on behalf of defendant.

She testified further that after the car struck the tree all she remembered was that some men picked her up and put her in an ambulance and she was taken to the General Hospital in Kansas City, where she remained a few hours, and was then taken to Research Hospital in said city, where she stayed six weeks; that during the entire time she was in bed she was required to lie on her back and was held "in position" by large sandbags placed at both sides; that she suffered a fracture of her left pelvis; that she suffered pains in her sides, back and abdomen, her right arm was severely cut and bruised and three scars were left on her arm; that the arm pained her for a year when another operation was performed and a piece of glass removed from it; that after leaving the hospital she visited her doctor on numerous occasions; that the doctor found that she had a dislocated kidney; that in December, 1935, a short time before the trial, she underwent an operation for the dislocated kidney.

On cross and re-cross examination she testified that she did not, at any time, make any protest or complain of defendant's driving, or see anything up to the time of the accident that was subject to criticism; that she always felt that defendant could have avoided the accident after the car started across the pavement; that she did not know what happened when the car turned west except that it increased in speed.

A written statement of the plaintiff was produced by the defendant. This statement was taken by some man who was not identified by any witness in the case and he did not testify. This man came out to the hospital, where plaintiff was located, and took the statement from her. In it she stated the car "skidded as if they had struck some mud on the pavement;" that the automobile was moving about twenty to twenty-five miles per hour when it first started skidding; that it was raining at the time and the pavement was wet and slick; that she could not tell for sure what caused the automobile to skid; that Mr. Ashton

was a careful driver and that he was driving carefully at the time; that "I do not consider him to blame for this accident in any way whatever."

At the trial she testified that, although the statement was not in her handwriting, she had read it over when it was taken and had signed it but at that time she was not in condition to know what it contained; that she did not remember what she told the man; that the man wrote the statement; that she did not remember whether she told him that the defendant was a careful driver; that "He asked me questions, but I had no way of knowing what he was writing. Q. Well, did you tell him that Ashton (defendant) was a careful driver? A. Well, I suppose I did, if it is on that statement;" that she did not remember whether she told him or not; that so far as she knew, the defendant was a careful driver. "Q. And when you read this over and signed it, you were trying to tell, as best you could then, what you remembered, weren't you? A. Yes. Question: And you were in a condition at that time to know actually what it contained, although you glanced over it? A. No, I was not;" that she did not recall telling Mrs. Ashton that she didn't blame her husband (defendant) in any way. She testified that the statement was incorrect; that it was untrue where it said that it was raining and that the pavement was wet and slick; that she would not say that the car skidded; that she did not know what happened; that the statement was incorrect in stating: "I do not consider him (defendant) to blame for this accident."

The case was submitted on plaintiff's Instruction Number 1 on the *res ipsa loquitur* theory. This instruction reads as follows:

"The court instructs the jury that if you find and believe from the evidence that, on the 13th day of September, 1934, the defendant was the owner of the automobile mentioned in the evidence, and that on said day said defendant was driving said automobile in a general northerly direction along and upon Benton Boulevard, in Kansas City, Jackson County, Missouri, and that at said time plaintiff Aurelia Vesper was riding in said automobile at the invitation of defendant, and that at all the times mentioned in the evidence defendant was in complete charge and control of said automobile, if you so find, and if you find that said highway was constructed of macadam about forty (40) feet in width and that said highway was then and there unobstructed and free from travel, if you so find, and that defendant caused and permitted said automobile to leave said pavement and go over the curb and collide with a tree several feet west of said highway, then you are instructed that from such facts (if you believe them to be true) you may infer that the defendant was negligent, and you may so find, unless you find and believe from the other facts and circumstances in evidence that the occurrence was not due to the

defendant's negligence, and if you do find and believe from all of the evidence in the case that the defendant was negligent and that the plaintiff's injuries, if any, were directly caused by the defendant's negligence, then your verdict should be for the plaintiff.''

It is insisted by the defendant that the court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence; that there is no evidence tending to show that defendant was negligent and that under the facts in this case the res ipsa loquitur theory is not applicable.

Whether a host is liable to his guest, under the res ipsa loquitur theory, for injuries sustained by the latter as a result of the former's negligence in driving his car, depends upon the circumstances. ''When an automobile and the operation thereof are exclusively within a host's control, and it is not reasonably within the power of the injured guest to prove the cause of the accident, which is one not commonly incident to the operation of the automobile, the occurrence itself, although unexplained, is prima facie evidence of the host's negligence.'' [9 Blashfield, Cyc. of Auto. Law and Practice, pp. 320, 321.] We have no doubt but that that doctrine is applicable under the facts in this case. [Masten v. Cousins, 216 Ill. App. 268; Mackenzie v. Oakley, 94 N. J. Law, 66; Crooks v. White (Calif.), 290 Pac. 497; Godfrey v. Brown (Calif.), 29 Pac. (2d) 165; State v. Coolidge, 171 Atl. 244; Shea v. Hearn, 171 Atl. 248; Barger v. Chelpon (S. D.), 243 N. W. 97; Mackler v. Barnert, 49 S. W. (2d) 244; Heidt v. People's Motorbus Co., 9 S. W. (2d) 650; Berry on Automobiles (4 Ed.), sec. 610. See, also, Tabler v. Perry, 337 Mo. 154.]

Complaint is made of the giving of plaintiff's Instruction Number 1. It is claimed that it suggests to the jury that they may infer certain facts of negligence from a part or all of the evidence; that it amounted to an unwarranted comment on the evidence; that it singles out the evidence in the case and gives the jury the impression that such evidence is favorable to plaintiff and unfavorable to the defendant; that it separates that evidence ''from the other facts and circumstances in evidence;'' that it invites the jury to consider the evidence piecemeal and not as a whole in determining the issue of negligence; that it amounts to an argument in plaintiff's favor; that it is misleading to the jury with reference to the proper rule on the burden of proof: that it is erroneously misleading in that it is subject to the construction that defendant is required to furnish evidence and tends to obscure and destroy the right of the jury to find that defendant was not negligent from the specific facts set out in the instruction when, as a matter of fact and law, the jury had such right.

The part of the instruction criticised substantially is in the form suggested as proper by the Supreme Court in Harke v. Haase, 335

Mo. 1104, 1111, and is similar to the one approved in Thompson v. Kansas City Public Service Company, No. 18955, decided by this court but not yet reported. We fully discussed the propriety of such an instruction in the Thompson case and it would serve no useful purpose to go over the matter again. Under authority of that case, and the Harke case, the contention of the defendant will be disallowed.

It is insisted that the court erred in permitting counsel for plaintiff, in arguing the case to the jury, to state that the person who obtained the signed statement from plaintiff, while she was in the hospital, was "slipping out to the hospital and taking the statement from an injured lady," and in permitting the plaintiff's counsel to argue to the jury that this man was a "fugitive."

As before stated, defendant produced no testimony and there was no evidence as to whom the gentleman was who took the statement. Counsel did not refer to the man who took the statement as a "fugitive" but as a "fugitive gentleman." He did refer to the gentleman as "slipping out to the hospital." It was proper for counsel to argue unfavorable inferences to defendant for the latter's failure to produce this man. [Waeckerley v. Colonial Bak. Co., 67 S. W. (2d) 779.] The word "'fugitive" was not used as a noun but as an adjective, the expression being "fugitive gentleman." Webster states that the word is sometimes used in the sense of "not fixed;" "not durable;" "liable to disappear or fall away; "volatile;" "uncertain;" "evanescent;" "liable to fade." We think there was no reversible error in the court's refusal to sustain defendant's objection to this argument, including the reference to the man slipping out to the hospital. [Ostertag v. Union Pac. R. R. Co., 261 Mo. 457.] In addition to this, counsel for plaintiff referred to this man as a "fugitive gentleman" several times before any objection was made. For this reason alone the court did not err in refusing to sustain the objection made as to that description of the man. [Dougherty Real Estate Co. v. Gast, 95 S. W. (2d) 877, 880, 881; Neely v. Chi. Gr. West. R. R. Co., 14 S. W. (2d) 972; Gaty v. United Rys. Co., 251 S. W. 61; Keys v. Chi., B. & Q. R. R. Co., 31 S. W. (2d) 50, 62.]

After plaintiff had been questioned by the defendant regarding the statement that she had given and the statement had been read to the jury, counsel for the plaintiff, on re-direct examination, questioned her in reference to the circumstances under which it was given. Counsel asked plaintiff: "Q. (By Mr. Jacobs): Who was the man that came out and wrote this up? A. As I understood, he was an insurance man." This was the only reference to insurance in the trial of the case. At the time answer was made counsel asked the court to discharge the jury, which the court refused to do. He then asked the court to instruct the jury that the statement of plaintiff "is a conclusion, and highly improper, and not responsive to the question,

and that the jury will not consider that answer in any way." The court ruled that he would not orally instruct the jury but, at the proper time for the giving of instructions, if defendant desired one on the subject, he would give it. At the close of the testimony, the court, on behalf of defendant, instructed the jury as follows:

"The court instructs the jury with reference to a question asked plaintiff on the stand in substance as to who the man was that took her statement and her answer in substance that she understood he was from an insurance company, that said answer of plaintiff was not responsive to any question, was purely voluntary and improper, and was the statement of a mere conclusion on her part. No insurance company is a party to this suit, the action is solely between these individual parties, plaintiff Miss Vesper on the one hand and defendant Mr. Ashton on the other hand, and the issues submitted in these instructions will be decided by you solely between them, and it would be highly improper for the jury to consider said answer of plaintiff above referred to or to discuss or consider any matter touched upon or referred to in said answer, and said answer of said witness Miss Vesper is withdrawn from the consideration of the jury and must not be considered by the jury in making up its verdict."

It is now insisted that the instruction could not have cured the poison injected into the case by the mention of insurance and that the court erred in not discharging the jury. It was admitted at the trial that the answer of the witness was not responsive to the question but was purely voluntary. A similar situation arose in Webb v. Hoover-Guernsey Dairy Co., 138 Ore. 24, where the court said, l. c. 29: "The statement offered in evidence not being in the handwriting of the witness, and being in some respects different from her testimony in chief, counsel for plaintiff had a right on redirect examination to disclose the interest the party writing the statement had in the matter. The answer in which the matter of insurance appeared was not responsive to the question asked. Counsel could not foresee that such an answer would be made. The answer does not show that defendant, or any one else, was insured. Counsel had a right to have the witness disclose who prepared the statement. When the parties interested, either directly or indirectly, in the result of litigation, send their agents to interview witnesses and prepare statements for such witnesses to sign, the jury has not only the right to know who such agents are, but whom such agents represent, when a discrepancy arises between the testimony given by the witness on the stand and the statement prepared by such agent."

In this State it is questionable whether a party may show that a person, who has taken a statement from a witness, represents an insurance company, rather than the other party to the cause, so long as that person is not used as a witness in the case. [See Hannah v.

Butts, 51 S. W. (2d) 4, 8; Snyder v. Wagner Elec. Co., 284 Mo. 285; Zein v. Pickel Stone Co., 273 S. W. 165, 166, 167.] There are a number of cases holding that where a question is asked in good faith and the answer, such as the one involved in the case at bar, is voluntary on the part of the witness, there is no error in refusing to discharge the jury because of the mention of the question of insurance by the witness. [Jones v. Mo. Freight Transit Corp., 225 Mo. App. 1076; Kiser v. Suthard (Va.), 174 S. E. 682; York Ice Machinery Corp. v. Sachs, 173 Atl. 240; Huls v. Dalzell· (Ky.), 66 S. W. (2d) 28; Texas Cities Gas Co. v. Ellis (Tex.), 63 S. W. (2d) 717; Goodman v. Guida, 269 N. Y. S. 811.] In none of these cases was the witness, who answered the question, a party to the cause. However, in the last analysis, whether the jury should be discharged, under such circumstances, depends upon whether there was good or bad faith in the injection of the question of insurance. [Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 201; Cazzell v. Schofield, 319 Mo. 1168, 1195.]

It was admitted at the trial that the statement of the witness about the insurance was purely voluntary and, of course, counsel for plaintiff did not act in bad faith. There is nothing to show that plaintiff, herself, acted in bad faith in the matter and we cannot say that the court erred in refusing to discharge the jury under all of the circumstances. We think there is a distinction to be made between counsel and a party mentioning the subject of insurance. It is to be assumed that a lawyer knows the circumstances under which insurance may be mentioned. It requires considerable legal knowledge on the subject to know when and when not to bring the matter into the case. A layman is not presumed to know the fine legal distinction governing such matters. Good faith is a question of fact and the legal presumption as to knowledge of the law has no place in determining the question. [22 C. J., p. 150.]

We have examined the cases cited by the defendant including Allen v. Wilkerson, 87 S. W. (2d) 1056; Whitman v. Garver, 88 S. W. (2d) 885; Rytersky v. O'Brine, 70 S. W. (2d) 538. In all of those cases the matter of insurance was either brought out, or testimony of the subject was used, by counsel under circumstances that showed lack of good faith.

The court in the case at bar should have followed the usual practice of vigorously instructing the jury orally upon the subject immediately upon the mentioning by the witness of insurance. However, we find no reversible error in the method used by the court in meeting the situation.

It is urged that counsel for the plaintiff took advantage of the testimony of plaintiff, in this regard, when, in his argument to the jury, he stated that he was asking for the modest sum of $5000 and no more.

There was no objection to the argument and, in addition, there is nothing in the record to show that the insurance, if any, was for $5000. We find no evidence that the argument was intended to be for any purpose other than it purported to be.

The judgment should be affirmed and it is so ordered. All concur.