PATRICIA L. CHARLTON, by MRS. O. R. CHARLTON, her next friend, Appellant, v. L. G. LOVELACE and GENERAL FOODS SALES COMPANY, INC., a Corporation.—No. 38480.—173 S. W. (2d) 13.

Division One, July 6, 1943.

*Spencer & McPherson* and *Kelsey Norman* for appellant.

366

*Roy Coyne* for General Foods Sales Company, Inc.; *McReynolds & Flanigan* and *John H. Flanigan, Jr.,* for L. G. Lovelace, respondents.

DALTON, C.—Action for wrongful death of plaintiff's father by defendants' negligence. At the close of plaintiff's evidence the court directed a verdict for defendants, whereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside. The court refused to set the nonsuit aside on motion, and plaintiff has appealed.

Plaintiff's father O. R. Charlton (hereinafter referred to as deceased) was employed by the General Foods Sales Company, Inc., as district representative or sales manager, at Joplin, Missouri. Defendant Lovelace was his immediate superior. The company had frequent meetings of its salesmen, and some of these meetings were held at the Lake of the Ozarks. On the occasion in question a meet-

ing was held at that place by direction of Mr. Lovelace, and deceased had been directed by Mr. Lovelace to attend. All expenses were borne by the defendant company. Mr. Lovelace had a cabin about four miles up the lake from Lou's Dock on the Lake of the Ozarks, where the meetings were held, and he, also, owned and operated a pleasure boat, referred to as a Dodge factory built indoor motorboat, with a top speed of around 32 miles an hour.

Sometime in the afternoon of June 20, 1940, Mr. Lovelace, deceased, and some seven or eight other persons, came to Lou's Dock (a place operated by one Lou Ernst) and, about 4:30 or 5 o'clock in the afternoon, Mr. Lovelace and his party left Lou's Dock in Lovelace's boat to go up to Lovelace's cabin for dinner. Later that evening between 8:30 and 9:30 P. M., they returned to Lou's Dock and stayed until 1 A. M., the following morning, June 21, 1940, when they again left in Mr. Lovelace's boat. [15] Their intended destination at that time does not expressly appear, but Mr. Ernst saw them leave and Mr. Lovelace was in the front seat, operating the boat, and deceased was in the rear seat.

Sometime later that night, how much later does not appear from the evidence, except as might be inferred from the fact that Mr. Ernst had been in bed 20 or 30 minutes (but how soon he retired after the party left does not appear), he heard a motorboat come to his dock, and a Mr. Reno, who owned the "adjoining place," called him. Mr. Ernst and one of his employees got up, went out and got in the boat with Mr. Reno and went up the lake, "hunting a boat that was upset or something had happened." It was a moonlight night and the lake was practically at full reservoir. "There was a southwest wind; not a high one; just low waves; it wasn't really rough." They found a Mr. Lee Saffington "floating" in the water. He was one of the men who had been in the Lovelace boat, with Mr. Lovelace and deceased, when it left Lou's Dock at 1 A. M. "He had a cushion and back out of one of the seats in this (Lovelace's) boat." Search was made for the Lovelace boat that night and later, but it was never found. What had happened to the other occupants of the Lovelace boat appears only by inference. Deceased's body was recovered ("gotten up") the next day. Where it was found, with reference to where Mr. Saffington was found, or what had happened to him, does not expressly appear, but there was evidence that deceased's widow was advised that her husband had drowned.

Mr. Ernst, a witness for plaintiff, saw Mr. Lovelace and certain other occupants of the Lovelace boat at a coroner's inquest held the next day. Mr. Ernst testified: "Q. Did you hear him (Mr. Lovelace) say then or at any time subsequent to that time that when the boat turned over he was driving it? . . . Ans. Yes, sir."

This was all of the evidence in the record, which in any manner tended to show how, when or where deceased met his death, or as to who was responsible for it.

Witness Ernst further testified that for eleven years he had handled boats on the lake of the type owned by Mr. Lovelace; that he had operated them and ridden in them, and had personal knowledge of the operation, stability and capability of such boats. He was then asked: "Now then, I desire to ask you, Mr. Ernst, if a boat of the character and type and quality of the boat of Mr. Lovelace, under the conditions that existed when you saw it leave the dock on the Lake of the Ozarks there on June 21, 1940, that the same is carefully and reasonably operated, that the same will not turn over or sink?" The court sustained an objection to the effect that the question called for a mere conclusion or opinion of the witness. The court further stated that the witness was not qualified to answer the question; that an answer to the question would be a matter of conjecture; and that the question did not eliminate other matters which might cause the boat to capsize or sink. Plaintiff then offered to show by the witness that a boat of the type and character of the boat owned by Mr. Lovelace operated and driven, under conditions prevailing on the lake on the night in question, "if driven by a person of ordinary care would not usually, or ordinarily capsize or sink, if managed and operated by ordinary care, and that to cause such a boat, . . . to capsize and sink under such conditions usually and ordinarily would require and be caused by negligent acts of the operator of said boat."

No error is assigned or briefed as to the exclusion of the above evidence and the only error assigned or briefed by appellant is as follows: "The plaintiff's evidence to the effect that plaintiff's deceased father was a passenger in a motorboat owned and under the sole control of defendant, Lovelace, in his capacity as agent and general division manager for defendant company; that plaintiff's deceased father was required as incident to his employment with defendant company to become a passenger in the said motorboat and that while thus a passenger the motorboat capsized or sank as a result of which plaintiff's deceased father drowned; and that at the time of the accident the lake was full of water, there was only a mild southwest wind, low waves on the lake and it was a moonlight night, such evidence, together with expert testimony offered by plaintiff and excluded by the court to the effect that under such conditions such a motorboat does not normally capsize and sink if handled with due care, was sufficient to take plaintiff's case to a jury and the court erred in sustaining defendants' demurrer to the evidence, and in refusing to sustain plaintiff's motion to set aside the involuntary nonsuit, and in failing [16] to apply the doctrine of res ipsa loquitur to this case."

The charge of negligence in the petition is that defendant Lovelace, while acting as agent of defendant General Foods Sales Company, Inc., and while in complete control of said motorboat, and while said boat was under his "sole and exclusive control, management and supervision" (for reasons unknown to plaintiff and for causes beyond

plaintiff's knowledge, control or ascertainment), "so carelessly and negligently managed, operated, and controlled said motorboat that he caused the same to capsize," and that, as a direct result of said negligence, "plaintiff's father, O. R. Charlton, was thrown into said lake and killed." Respondents contend the petition does not state a cause of action, but we need not determine that question in ruling the errors assigned by appellant.

Were the facts in evidence sufficient to make a submissible case for plaintiff under the res ipsa loquitur doctrine? Appellant has cited seventy cases, among them passenger and carrier cases arising from sudden stops or starts, wrecks, collisions, etc.; elevator and escalator cases; cases involving falling objects, the explosion of bottles, or the escape of gas or electricity; cases where persons were injured by objects extending from passing trains, by the unexplained starting of machinery, or by other circumstances, where the res ipsa loquitur doctrine has been applied.

Appellant contends that the doctrine of res ipsa loquitur applies to the facts in this case because (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentality involved was under the management and control of the defendants; and (c) the defendants possess superior knowledge or means of information as to the cause of the occurrence. McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, 559.

Appellant cites Vesper v. Ashton, 233 Mo. App. 204, 118 S. W. (2d) 84, 87, where the following rule was applied: " 'When an automobile and the operation thereof are exclusively within a host's control, and it is not reasonably within the power of the injured guest to prove the cause of the accident, which is one not commonly incident to the operation of the automobile, the occurrence itself, although unexplained, is prima facie evidence of the host's negligence.' 9 Blashfield, Cyc. of Automobile Law & Practice, Sec. 6049, pp. 320, 321, . . . Mackler v. Barnert (Mo. App.), 49 S. W. (2d) 244; Heidt v. People's Motorbus Co. (Mo. App.), 9 S. W. (2d) 650; Berry on Automobiles, 4th Ed., Sec. 610."

Appellant relies particularly on the following cases: McCloskey v. Koplar, supra, (where a detached radiator tipped over, fell upon and injured a theater patron); Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001, (where an automobile left its accustomed place of travel on the street and came upon the sidewalk and struck a person who was standing there); Tabler v. Perry, 337 Mo. 154, 85 S. W. (2d) 471, (where an automobile for no apparent cause ran off the paved road, collided with an embankment and turned over killing a guest); Vesper v. Ashton, supra, (where an automobile suddenly ran off the road and collided with a tree); and Adams v. LeBow (Mo. App.), 160 S. W. (2d) 826, (where the door of an automobile came open and the guest passenger fell out). In each of these cases the evidence showed

the attendant circumstances, which reasonably excluded, not only negligence on the part of the injured person, but all defensive inferences that the injury was due to acts of third persons or to causes for which the defendant was not responsible. Each case shows an unexplained unusual happening or occurrence, which with its attendant circumstances reasonably warranted an inference that the negligence of the defendant was the proximate cause of the happening producing the injury.

In the case under consideration the existence of a master and servant relationship is of course no bar to the application of the res ipsa loquitur doctrine, if otherwise applicable. Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693, 696. But, "certainly the mere fact, and nothing more, that the employee was injured while in the line of duty is not sufficient to bring the res ipsa loquitur doctrine into action, . . . it is incumbent upon the plaintiff seeking to invoke it to show by *facts and attendant circumstances the existence of the conditions essential to the application of the doctrine.*" (Italics ours.) Noce v. St. Louis-San Francisco R. Co., 337 Mo. 689, 85 S. W. (2d) 637, 640.

"The accident with its attendant circumstances must be such that the triers of fact will be justified in drawing an inference of negligence therefrom. . . . [17] The attendant facts must be such as to raise a reasonable inference of defendant's negligence but not necessarily such as to exclude every other inference. The jury must draw the inference of negligence from the facts proven, and it must be a reasonable one." Gordon v. Muehling Packing Co., supra, (40 S. W. (2d) 693, 698, 701).

"The doctrine is applicable only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence and in the light of ordinary experience would presumably not have happened if those who had the management or control exercised proper care. Accordingly the mere occurrence of an unusual or unexplained accident or injury, if not such as necessarily to involve negligence, does not warrant the application of the doctrine, and it has been held that the doctrine does not apply where the act which caused the injury was beyond doubt the voluntary and intentional act of some person. Furthermore, the rule cannot be invoked where the existence of negligence is wholly a matter of conjecture, and the circumstances are not proved, but must themselves be presumed." 45 C. J., p. 1211, Sec. 778; Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo. App. 312, 118 S. W. (2d) 509, 512.

"The character of the accident, rather than the fact of the accident, determines whether the doctrine of res ipsa loquitur applies." 15-16 Huddy's Cyc. of Automobile Law, 9th Ed., Sec. 157; Harke v. Haase, supra.

"The character of the accident, rather than the fact of accident, decides, as a legal proposition, whether the doctrine applies. . . . But though mere accident is not proof of negligence, some accompanying elemental facts may . . . afford room for the jury to infer that the negligence of the defendant caused the injury." Chaisson v. Williams (Me.), 156 Atl. 154, 157; 45 C. J. 1200, Sec. 771.

In the case of Harke v. Haase, supra, (75 S. W. (2d) 1001, 1003), this court asked these questions: "What is a res ipsa loquitur case anyhow? Reduced to simple terms, does it not merely mean that negligence can be proved by circumstantial evidence and *that certain circumstances, as to the character of an accident,* are sufficient to take the case to the jury." (Italics ours.) The court then quoted from the case of Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, as follows: "Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

The importance of showing the attendant facts and circumstances for the purpose of laying a foundation for the inference that the injury was caused by defendants' negligence, rather than by some other cause, is well illustrated in the case of Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. (2d) 702, 705. The court said: "The plaintiff had the burden of showing, prima facie at least, that the defendant was negligent, and that its negligence caused his injury. It was not necessary that he prove these elements of his case by direct evidence in order to discharge such burden; if they can be reasonably inferred from facts which his evidence tended to establish, that is all that is required. The facts shown by the evidence were that the plaintiff suffered physical injury and that the injury was occasioned by the breaking of a chain by which a steel truss was suspended to the hoist of a traveling crane. From the bare fact of injury, no inference of negligence can be drawn. Does the occurrence which occasioned the injury give rise to any inference of negligence on the master's part?

"So far as the evidence discloses, there was nothing unusual or abnormal in the action of the crane, the motor, or the hoist; the occurrence was shrouded in no mystery; it consisted simply of the breaking of the chain by which the truss was suspended. Now a latent defect, not discoverable by any reasonable inspection, may have caused the chain to break, a cause not attributable to negligence on the part of any one; or the chain, on account of its size, weight, or other plainly discernible quality, may have been obviously unfit for the pur-

pose [18] for which it was used, but notwithstanding was negligently selected and used by a fellow servant, negligence for which the master is in nowise responsible. It is clear, therefore, that the occurrence does not so speak as to inevitably charge the defendant with negligence. . . . Plaintiff's evidence failed to make out a submissible case either with or without the aid of the res ipsa loquitur doctrine.''

The doctrine of res ipsa loquitur is applicable only in those cases where the facts shown speak of the negligence of the defendant. ''To make out a case for the application of the doctrine of res ipsa loquitur, the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed. . . . While it is not necessary that they exclude every possible hypothesis except that of the defendant's negligence, . . . it is entirely clear that, if two or more inferences can be equally well drawn from them, one of which points to negligence on the part of the defendant as the cause of plaintiff's injury, and the others to causes for which the defendant was in no way responsible, proof of such facts does not make out a prima facie case for plaintiff.'' Grindstaff v. J. Goldberg & Sons Structural Steel Co., supra.

In 45 C. J., p. 1212, Sec. 780, it is said: ''Where there are two or more persons or causes which might have produced the injury, some, but not all, of which were under the control of defendant or for which he was legally responsible, plaintiff, in order to invoke the doctrine, must exclude the operation of those causes for which defendant is under no legal obligation.'' See, 9 Blashfield, Cyc. of Automobile Law & Practice, Permanent Edition, Sec. 6046, pp. 318, 320.

In the case of McGrath v. St. Louis Transit Co., 197 Mo. 97, 104, 94 S. W. 872, 874, this court said: ''Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the accident, but show a state of affairs where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances of the accident, and the defendant is not called upon to explain the cause of the accident, and to purge himself of the imputed or inferential negligence.''

In Benedick v. Potts, 88 Md. 52, 55, the court said: ''As an injury may occur from causes other than the negligence of the party sued, it is obvious that before a liability on account of that injury can be fastened upon a particular individual, it must be shown, or there must be evidence legally tending to show, that he is responsible for it; that is, that he has been guilty of the negligence that produced or occasioned the injury. *In no instance can the bare fact that an injury has happened, of itself and divorced from all the surrounding circumstances, justify the inference that the injury was caused by neg-*

*ligence.* It is true that direct proof of negligence is not necessary. Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. But this inference must, after all, be a legitimate inference and not a mere speculation or conjecture." (Italics ours.) See, Pointer v. Mountain Ry. Construction Co., 269 Mo. 104, 189 S. W. 805, 809; State ex rel. Brancato v. Trimble, 322 Mo. 318, 18 S. W. (2d) 4, 5; Estes v. Estes (Mo. App.), 127 S. W. (2d) 78, 80; Winter v. Van Blarcom, 258 Mo. 418, 424, 167 S. W. 498; Lee v. Jones, 181 Mo. 291, 298, 79 S. W. 927; Miller v. Wilson (Mo. App.), 288 S. W. 997, 999; Frank v. Free, 190 Mo. App. 73, 81, 175 S. W. 217; 9 Blashfield, Cyc. of Automobile Law & Practice, Permanent Edition, Sec. 6046, p. 319.

In order to make a prima facie case under the res ipsa loquitur doctrine the evidence must be such as to reasonably exclude the negligence of the injured as a contributing cause of the injury, to wit, "that he was injured, without any fault on his part." O'Gara v. Transit Co., 204 Mo. 724, 733, 103 S. W. 54; Hipsley v. The K. C. St. J. & C. B. Ry. Co., 88 Mo. 348, 352; Lemon v. Chanslor, 68 Mo. 340, 354; Olsen v. Citizens' R. Co., 152 Mo. 426, 432, 54 S. W. 470; Deister v. Kansas City Northwestern R. Co., 271 Mo. 63, 195 S. W. 499, 501.

In the case of Removich v. Bambrick Bros. Construction Co., 264 Mo. 43, 173 S. W. 686, the plaintiff was digging earth in a trench for a sewer. The earth was placed in a bucket attached to a steel cable by means of a hoisting apparatus, run by steam. The bucket [19] was let down into the trench, and, when filled with earth, was conveyed to another point in the line of sewer, where the concrete sewer had been laid in the trench, and the dirt was then emptied for the purpose of filling up the excavation. While one of such buckets was being conveyed over the plaintiff's head, the cable broke, allowing the bucket to fall upon the plaintiff and injure him. The court said (173 S. W. 686, 687, 689): "To make out a case for the application of this doctrine (res ipsa loquitur), the facts relied on ought to be such as reasonably to exclude all defensive inferences attributable by operation of law to the negligence of the plaintiff, or that of a fellow servant (absent a fellow servant statute), defects in the lethal instrumentality which are latent, or so recent in happening as to afford no reasonable opportunity for their discovery, lack of causal connection, and the assumption of the usual hazards of the employment. . . .

"Do the facts in the instant case so speak as inevitably to charge prima facie negligence from the bare statement that the wire cable broke and the bucket fell and the defendant was hurt? We do not think so, nor do we think that the adjudged cases in this state or elsewhere so hold by even a respectable weight of authority." The court further said: "The petition of plaintiff here under discussion

did not attempt to set out any reason for the breaking of the steel cable. It broke, and the bucket fell, and plaintiff was hit and hurt. That is all. It may have broken from having been concededly overloaded by plaintiff or by his fellow servant; it may have broken from a latent undiscoverable defect; it may have broken because of a sudden jerking or unnecessarily hard movement of the hoisting engine; it may have suddenly become defective too recently to thrust on defendant the legal duty of discovery—any of these things, or even others, may have operated to produce plaintiff's injury. Therefore it was, we think, the duty of plaintiff to state such affirmative facts, *touching the manner of the happening of the casualty, as to negative, by fair inference, the theory that it occurred by reason of some efficient defensive cause precluding, as a matter of law, the liability of defendant.*'' (Italics ours.)

Our attention has been called to only one case in which a plaintiff has sought to apply the doctrine of res ipsa loquitur where a boat has turned over. In that case of Herbst v. Levy, 279 Ill. App. 353, 356, 363, the defendant was operating a motorboat in which five other persons, including deceased were riding. ''The boat was traveling at a speed of between 1,800 and 1,900 revolutions a minute, which was equivalent to 12 or 15 miles an hour. It had crossed to the west end of Fox Lake, and was making a slight turn to the right, following the channel. For some reason which is not explained by the evidence the boat seemed to raise up in the water, then level down, and turn over to the left, throwing the occupants into the water.'' The court after reviewing the evidence in some detail said: ''In the case at bar, the cause of the capsizing of the boat is, under the state of the record, left entirely to speculation and conjecture, and under these circumstances the doctrine of res ipsa loquitur cannot be applied. To permit recovery under this rule in the instant case, plaintiff would also be required to prove that defendant was in possession and control of the instrumentalities by which the accident was brought about, and that the accident was of such a nature that it could not reasonably be expected to have happened if defendant was not negligent in the control of such instrumentalities. . . . While it is true that defendant was in possession and control of the motorboat, he did not have control of the water in which the boat was being driven, of the objects or particles that might have been therein, nor of the currents of the lake. He might have avoided obstructions on the surface of the water, but if there were any submerged or that could not be seen, he was in no better position to discover them than was the deceased himself.'' It was held that no negligence was shown and that the doctrine of res ipsa loquitur was not applicable.

In the present case we may assume, without deciding, that the evidence in the record was sufficient to show that Lovelace's boat did in fact turn over; that it was traveling (in forward motion) when it

turned over; that Lovelace was still in the front seat operating the boat at that time; that deceased was still seated in the back seat; and that deceased was thrown out and drowned by the overturn of the boat. Such an assumption, however, could only be based upon the theory that [20] proof that the boat was in forward motion when it left Lou's Dock, and that deceased was in the back seat of the boat and defendant Lovelace was in the front seat, operating the boat, was proof of a state or condition of affairs of a continuous nature, which continued to exist after the party left Lou's Dock (absent a showing of change of condition), and that the boat turned over within the period of time within which said particular state of affairs, when once shown to exist, usually continues to exist under usual and ordinary conditions. See, Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S. W. (2d) 90, 94; King v. Missouri Pacific R. Co. (Mo. Sup.), 263 S. W. 828, 833.

But what caused the boat to turn over? Do the circumstances reasonably point to defendants' negligence? Do they reasonably exclude negligence on the part of deceased and other causes for which the defendants were in nowise responsible? Did the boat strike a submerged pole, rock, or reef, which could not have been discovered by the exercise of ordinary care? Did it collide with another moving motorboat, if so, who was negligent? Did one of the passengers turn the boat over or interfere with its operation? In other words, did the overturn of the boat result from the voluntary act of a third party? Did the boat turn over because of wind, or water current, or because of contact with some floating object? Did it turn over for no apparent cause or was the cause clearly apparent? So far as the record is concerned, defendants may have exercised the highest degree of care in the operation of the boat and the casualty may have happened from a cause for which defendants were in no way responsible. Plaintiff's evidence was not sufficient to exclude causes for which defendants were not responsible. Was the mere fact that the boat overturned, wholly independent of the attending facts and circumstances, sufficient to establish negligence on the part of defendants as a direct and proximate cause of deceased's death? We do not think so, because there is no evidence in the record to indicate why the boat turned over. The evidence relied upon to show that defendants' negligence caused the overturn of the boat and deceased's death amounts to no more than mere speculation, conjecture or surmise. Brown v. Klein, 245 N. Y. S. 654, 230 App. Div. 681.

The court did not err in directing a verdict for defendants or in refusing to set the nonsuit aside. The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.