Byron C. COHEN et al.,
Respondents-Appellants,

v.

ARCHIBALD PLUMBING AND HEATING COMPANY, Defendant,

and

Gas Service Company, Defendant,

and

"Bud" Barker, d/b/a Barker Painting Company, Appellant-Respondent.

Nos. KCD 27542, KCD 27533.

Missouri Court of Appeals,
Kansas City District.

Aug. 29, 1977.

James H. Ottman and Charles R. Wall, Kansas City, for appellant-respondent; Shook, Hardy & Bacon, Kansas City, of counsel.

Glenn E. McCann and Stephen D. Manz, Kansas City, for respondents-appellants.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

PER CURIAM:

Cohen, et al. [called herein "Cohen"], obtained a judgment upon verdict for $29,000.00 against Barker submitted on the res ipsa loquitur doctrine as the result of an explosion of lacquer and lacquer thinner which occurred during the construction of an apartment complex. Cohen had sued also Archibald Plumbing and Heating Company and Gas Service Company, but these parties were dismissed upon the court's sustaining of motions for directed verdict. No issue is presented as to the propriety of the direction of verdicts.

Barker presents points applicable to the res ipsa loquitur submission saying first that the giving of Instruction No. 2 on that doctrine was error because the evidence showed that two or more instrumentalities

could reasonably have caused the explosion and fire, only one of which was under the management and control of Barker. As to the applicability of the doctrine, Barker says also the court erred in finding as a matter of law that the fire and explosion was an occurrence which does not ordinarily happen if those in charge use due care, and that Barker possessed superior knowledge or means of information as to the cause of the explosion or fire, when several different causes were equally probable, some of which Barker had no more knowledge than Cohen. Other points relating to evidence are that the court erred in excluding testimony of Barker's expert witness, Dr. Fowler, based upon his tests and a hypothetical question, excluded on the ground that the conditions were not shown to be substantially the same; and that the court erred in permitting Cohen's expert witnesses, Clark, Yackie, Hyder and Means, to give their opinions as to the cause of the explosion and fire because no proper foundation had been laid, and the opinions were not based upon sufficient competent evidence (facts) but were upon guesswork and conjecture.

 Cohen appeals (consolidated Case No. KCD 27533) contending that the verdict was grossly inadequate, indicating mistake and abuse of discretion by the jury, Cohen's evidence as to damages being uncontradicted, thus showing the verdict not to be supported by substantial evidence. This contention may be rather summarily disposed. In the leading case of *Cluck v. Abe*, 328 Mo. 81, 40 S.W.2d 558, 559 (1931), the court said, "In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached." The Cluck pronouncement has been the unvaried rule through a long line of cases. See *Boyd v. Margolin*, 421 S.W.2d 761, 767 (Mo.1967); *Ferguson v. Boyd*, 448 S.W.2d 901, 903[1, 2] (Mo.1970). The matter of inadequacy of the verdict was presented to the trial court in Cohen's motion for new trial, which was overruled. This court then is powerless again to weigh the evidence. Cluck, supra, 40 S.W.2d, page 560[5]; *Kirst v. Clarkson Construction Company*, 395 S.W.2d 487, 491[6–8] (Mo.App. 1965) [a property damage case]; *Strickner v. Brown*, 491 S.W.2d 253, 255[3, 4] (Mo. 1973). Here, Cohen's testimony was that the difference in the fair market value before and after the explosion and fire was about $60,000.00. The jury's award was about one-half that amount. There was evidence that the building was only 80% to 90% complete at the time of the explosion and fire. The jury had before it photographs of the damage to the building, as well as testimony describing the damage. Under all the evidence, it was for the jury to determine the nature and extent of damage and to fix the amount thereof. Cohen's appeal on the basis that the damages were inadequate is ruled against them.

 In essence Instruction No. 2, submitted against Barker, required the jury to find that Barker controlled lacquer and lacquer thinner, and the spraying thereof, in Building No. 9; that vapors became ignited and exploded in that building; that the explosion was the result of Barker's negligence; and as a direct result plaintiffs sustained damage. By Point I.A., Barker contends that this instruction was error (on the theory of the doctrine of res ipsa loquitur) because the evidence showed that two or more instrumentalities could reasonably have caused the explosion and fire, only one of the instrumentalities being under the management and control or the right of management and control of Barker. The contention is without merit because in order to be held not to have made a prima facie case under the res ipsa loquitur doctrine plaintiff's *own* evidence must show that there were two or more instrumentalities

which could have caused the injury, the defendant not being liable for one of them. Here, the evidence of Cohen showed only one reasonable cause—the accumulation of lacquer and lacquer thinner vapors which when mixed with air in proper proportion, would explode and cause fire. It was Barker's evidence, through his expert witness, Dr. Frank Fowler, who gave his opinion that the explosion and fire was a result of an accumulation of natural gas, a theory which Cohen's evidence tended to exclude. In this situation, Cohen was entitled to go to the jury upon the submitted theory of Instruction No. 2, and it was up to the jury to determine whether there was another cause of the incident, as Barker's evidence tended to establish. *Robinson v. Southwestern Bell Telephone Company*, 434 S.W.2d 249, 254, 255 (Mo.App.1968); *Lober v. Kansas City*, 74 S.W.2d 815, 823 (Mo. 1934); *Pandjiris v. Oliver Cadillac Co.*, 339 Mo. 726, 98 S.W.2d 969, 974 (1936).

■ It should be noted that Barker's argument that plaintiffs must exclude those causes over which the defendant exercised no control or right of control, is not the law in this state. That statement was in *Charlton v. Lovelace*, 351 Mo. 364, 173 S.W.2d 13, 18 (1943). See *Cruce v. Gulf, Mobile & Ohio R. Co.*, 358 Mo. 589, 216 S.W.2d 78, 81 (1948), where it was said, "That statement, unless qualified in its application, is too broad." And see also *Walsh v. Phillips*, 399 S.W.2d 123, 128[11] (Mo.1966), citing *Adam Hat Stores v. Kansas City*, 316 S.W.2d 594, 600[7] (Mo. banc 1958), "[A] plaintiff in a res ipsa loquitur case is not required to exclude every other reasonable theory of nonliability on the part of a defendant." *Long v. Spanish Lake Service, Inc.*, 507 S.W.2d 935, 938[8] (Mo.App.1974), cited by Barker, is in error in quoting the *Charlton* case statement in view of the pronouncements, supra, of the Supreme Court on the subject.

■ Barker next says, by Point I.B., that the court erred in finding as a matter of law that the explosion and fire was an occurrence which does not ordinarily happen if those in charge use due care. Cited are those cases on the general rule that the occurrence of an explosion and fire does not give rise to a presumption (*inference*, see *Gordon v. Muehling Packing Co.*, 328 Mo. 123, 40 S.W.2d 693 (1931); 167 A.L.R. 658, 668) of negligence or to its cause: *Craddock v. Greenberg Mercantile, Inc.*, 297 S.W.2d 541 (Mo.1957); *Kansas City Stock Yards Co. v. A. Reich & Sons, Inc.*, 250 S.W.2d 692 (Mo.1952). *Craddock* was a specific negligence case, but the court did, 297 S.W.2d, at page 547[3–12], state the general rule that the mere occurrence of a fire does not prove, or raise a presumption of negligence or the cause of the fire. The *Kansas City Stock Yards* case was also one of specific negligence as submitted to the jury, although plaintiff complained on appeal that the trial court erred in sustaining a motion to make the petition more definite and certain, thus depriving plaintiff of the res ipsa loquitur doctrine. The court quoted the rule 250 S.W.2d at page 700, " 'The rule of *res ipsa loquitur* is infrequently applied to cases involving fires, and to a lesser extent to explosion cases. [Citing cases.] The reasons are not difficult to perceive. The cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as where due care was wanting. * * *.' " These rules are not applicable to this case because, under Cohen's evidence, the thing that exploded, the lacquer and lacquer thinner vapors, which were allowed to accumulate within Building No. 9, was under the control and management of Barker's employees. 31 Am.Jur.2d, Explosions and Explosives, § 107, p. 879; *Kapros v. Pierce Oil Corp.*, 324 Mo. 992, 25 S.W.2d 777, 781 (1930); *Stephens v. Kansas City Gas Co.*, 354 Mo. 835, 191 S.W.2d 601 (1946); *Crystal Tire Co. v. Home Service Oil Co.*, 465 S.W.2d 531, 533[2] (Mo.1971); *McGowen v. Tri-County Gas Company*, 483 S.W.2d 1, 3 (Mo.1972), and cases there cited. Because the entire operation was under the control and management of Barker and his employees, who were engaged in doing the mixing, spraying of lacquer and lacquer thinner, and clean up operations toward the close of the day when this explosion and fire occurred, Cohen not even being then

present, the required element of the doctrine of res ipsa loquitur of defendant's superior knowledge or means of knowledge [*McCloskey v. Koplar*, 329 Mo. 527, 46 S.W.2d 557, 559 (1932)] is satisfied. Without question, in the jury's determination upon this record, the explosion and fire would not have occurred if due care had been used to prevent the accumulation of lacquer and lacquer thinner vapors within this building, and the court did not err in submitting the case to the jury under Instruction No. 2.

On October 27, 1969, a little more than four months after the explosion and fire occurred, Dr. Fowler conducted tests with a gas scope, an instrument designed to detect the explosive probabilities of vapors in air, in the second floor apartment above the half basement area where Cohen's undisputed evidence was that the explosion occurred. The building had then been rebuilt, and the windows where the test was conducted were open. The same Glidden paint was being used; the same spray gun was used in spraying woodwork with lacquer. It was a fair day with moderate temperature, and in Dr. Fowler's opinion a difference of a few degrees would have made no difference insofar as his testing was concerned. Dr. Fowler was, however, not permitted to give further testimony describing the tests on objection by all defendants that the conditions on October 27, 1969, were not shown to have been the same as those on June 19, 1969; that there was no showing that the temperature, barometer reading and humidity were the same; and that the tests were irrelevant and immaterial. Further objections were (on a lack of showing of similar conditions) that the tests were made when one-half of the building had been sprayed with lacquer the same day of the explosion and the other half had been sprayed the previous day [presumably a condition tending to support an inference of greater concentration of lacquer and thinner vapor, which witnesses testified was prevalent in the whole area]; that the windows were not shown to have been closed at the time of the test as the evidence showed they were at the time of

the explosion [presumably a condition to show the percentage of lacquer and thinner vapor to air—which evidence showed to be of an explosive character when vapor-to-air was within 1% to 6% proportions]; that the test was conducted in part on the second floor of the apartment, when the evidence showed the explosion took place in the lower basement area; and that part of the test was conducted by spraying lacquer into a closet when there was no evidence of that operation at the time of the explosion. It is obvious that the trial court did not err in excluding the evidence of the tests, and the offer of proof thereon, in the absence of a showing of test circumstances substantially similar to those existing at the time of explosion. The lack of the evidence above outlined related to the critical and technical physical conditions existing which would be conducive to an explosion occurring, or if shown adequately, that an explosion would not have occurred with similar concentrations of lacquer and thinner vapor under all the circumstances. The matter of the admission or exclusion of experimental evidence rests in the first instance in the discretion of the trial court, and the discretion in this regard will not be interfered with on appeal unless it is manifest that it has been abused. *Lynch v. Missouri-Kansas-Texas R. Co.*, 333 Mo. 89, 61 S.W.2d 918, 921[3–5] (1933); *Lietz v. Snyder Manufacturing Company*, 475 S.W.2d 105, 107[2] (Mo.1972), and cases cited. Judicial discretion in any manner exercised by a trial court "is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. It is, however, a principle deep within our law that on appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and that the burden of showing abuse of that discretion is on the appellant." *Anderson v. Robertson*, 402 S.W.2d 589, 593[3, 4] (Mo.App.1966). Here, because of the technical nature of an explosive mixture of air and lacquer and lacquer thinner vapors, and all of the factors which could

possibly enter into the making of an explosive mixture of these elements, reasonable men "could differ as to the propriety of the action taken by the trial court" because of which it cannot be said that the trial court abused its discretion. *Robertson*, supra, page 593[3, 4], and cases cited. It should be noted that although the evidence of Dr. Fowler's gas scope tests was rejected in consequence of which his testimony was not thereby bolstered, he was permitted to give his opinion that the explosion was not caused by the lacquer or spraying operations because the spraying had been completed many minutes before the explosion, and that it would not have been possible for the lacquer fumes to have remained in any explosive condition for that length of time. A jury issue as to the cause of the explosion and fire was thus created. Under all of the circumstances it cannot be said that the trial court erred in sustaining objections to the gas scope tests conducted by Dr. Fowler.

■ Barker contends that the testimony of Clark, Yackie and Hyder as to the cause of the explosion and fire should have been excluded because they did not have sufficient facts or other competent evidence to support their opinions. Each of these witnesses were and had been long-time firemen (27 to 28½ years) with the St. Joseph, Missouri, fire department. Each had had extensive university training, self study, and on-the-job training, designed to determine the cause and origin of fires. Clark testified that when he arrived at the scene, the north wall of the west side of the building was blown out, with the force hitting the bottom part of the wall. There was lacquer odor in all parts of the building, and he knew that lacquer thinner and vapors, which are heavier than air and would settle to the lowest point, would explode very violently when properly concentrated with air and ignited. He did not smell natural gas which will rise in the air [it was Dr. Fowler's testimony, for the jury to believe, that new pipes would absorb the odorizer in the natural gas, so that it could not be smelled). At the time he was there, the windows of the building were closed.

With respect to causation, Clark testified: "This explosion in the area of the East Side Apartments was a low type explosion, because it blew the bottom part of the wall out. Now a gas explosion could possibly blow a wall from the top and lay it out this way, but this wall was kicked out from the bottom. So it had to be vapor fumes that was heavier than air and settled to the lowest point. * * * Lacquer thinner fumes will settle to the lowest point. Q Did you find evidence of such an explosion in the northwest corner of the apartment you fought fire in? A Yes, judging from the way the wall was blown out into the courtyard."

Yackie's opinion was of similar import, except that he added, "Flammable liquids are almost always followed by a heavy fire. A natural gas explosion 99 out of 100 times will blow itself out." The fire did not blow itself out, but continued as a heavy fire. He eliminated electricity because it was off and natural gas because there he saw no damage to the gas pipe, no smell of gas, or a fire from leaking gas.

Hyder directed the firefighting activities. He smelled a paint or lacquer odor—very strong vapors—on both sides of the building, and all the windows were closed. The explosion was localized into one area of the building, which was not compatible with explosions he had investigated which occurred as a result of an accumulation of natural gas. Based upon his personal observation at the scene, his knowledge he obtained in fighting the fire, his training, background and experience, his opinion was that the explosion was a result of ignition of a mixture of air and vapors from Class I flammable liquids of which lacquer thinner is one.

Obviously each of these ranking firemen gave their expert opinions based upon personal observation, knowledge and long experience, and the court did not err in receiving their testimony. See the analogous cases where firemen were held to have been properly permitted to testify as to the cause and origin of explosions and fires: *McCon-*

*nell v. Pic-Walsh Freight Co.*, 432 S.W.2d 292, 299[12] (Mo.1968), and the there cited case of *State v. Turnbough*, 388 S.W.2d 781, 785[6, 7] (Mo.1965); *Capra v. Phillips Investment Company*, 302 S.W.2d 924, 930, 931 (Mo. banc 1957); and *Fair Mercantile Co. v. St. Paul Fire & Marine Ins. Co.*, 237 Mo.App. 511, 175 S.W.2d 930, 936[5] (1943). See also 32 C.J.S. Evidence § 546(82), p. 308.

 Witness Eldon A. Means was a consulting physical chemist produced who testified for Cohen as to the cause of the explosion and fire. He examined the building eight days after the explosion and fire, and gave his opinion, based upon a hypothetical question, that the explosion was caused by vapors from the lacquer thinner. Barker contends that the hypothetical question did not contain proper facts: That the question required him to assume that paint cans were in the northwest apartment of the bottom floor on the day of the explosion where he saw them eight or nine days later, when there was no evidence that on June 19, 1969, the cans were in the same location and in the same number as he later saw them. There was direct evidence that there were paint and lacquer cans present in that area of the building when the explosion took place. A fair reading of that portion of the question means only that Means assumed that there were paint and lacquer cans present in the apartment at the time of the explosion, not that they were in the exact location and number as he later saw them. Barker then says that there was no evidence for Means' assumption that lacquer thinner was being used by painters to clean up, but that fact was shown by admissions against interest of Barker which was read into evidence. Nor is it material that Means did not know how the painters used their spray guns, or that he did not make tests as to lacquer drying time, or the level of concentration of lacquer vapor to air in a room during spraying operations, so long as the facts hypothesized are fairly submitted as based upon evidence. Here, a reading of the entire hypothetical question reveals that it was sufficiently based upon facts tending to support Cohen's theory of recovery. *Odum v. Cejas*, 510 S.W.2d 218, 222[2, 3] (Mo.App.1974), and cases cited. The matter of permitting the answer to such a hypothetical question is for the trial court to determine, and the omission of some facts, if so, or a violation of general rules, does not necessarily preclude an answer. *Schmitt v. Pierce*, 344 S.W.2d 120, 130 (Mo. banc 1961). Here, as the record shows, Barker was given more than ample opportunity to expand the hypothetical question, and many of his suggestions were incorporated therein. The trial court did not err in receiving Means' opinion.

The judgment is affirmed.