CLARENCE L. MEADE, a Minor, by LUTE B. MEADE, Next Friend, v. MISSOURI WATER & STEAM SUPPLY COMPANY, Appellant.—300 S. W. 515.

Division One, December 7, 1927.

*John E. Dolman* for appellant.

352

*Duvall & Boyd* and *Miles Elliott* for respondent.

LINDSAY, C.—This is an action for damages for personal injuries sustained by the plaintiff, respondent here, as the result of the falling of a freight elevator in which plaintiff was riding in defendant's place of business, and while he was in the employ of defendant.

The petition did not allege specific acts of negligence on the part of defendant, but the case was brought and tried under the doctrine of *res ipsa loquitur*. The sole question presented by the defendant on its appeal is whether the plaintiff made a case at all. The defendant was engaged in the sale of water, steam, and plumbing supplies and machinery, in the city of St. Joseph, and the elevator in question was used to move merchandise and other articles between the first and second floors of the building occupied by the defendant in its business. It was described as being a hand-power elevator, converted into an electric elevator. It was not enclosed, and the platform moved up and down, in a frame of four upright posts. These extended from the ground floor to the top of the second floor. At and near the ceiling above the second floor, the electric motor was located, and the wheels and machinery, including a drum about which operated a cable. There were two crossbeams, which supported the frame work which sustained and held this machinery, sheave wheels or pulleys, and other means of operation. This supporting frame work at the top, and the wheels, cable and other apparatus were not enclosed, but could be seen in looking upward from the platform of the elevator. It was set in motion by pulling the cable. Thereby, the platform, if at the ground floor, was caused to move upward

and stop automatically at the second floor, and similarly when at the second floor, to descend and automatically stop at the ground floor. It was constructed so as to operate only between the first and second floors.

The allegations which characterized the nature of the cause of action, were, that while the plaintiff in the performance of his duties was riding in the elevator which was ascending from the first to the second floor, and after it had ascended to a great height above the first floor, the elevator "by reason of the negligence of defendant was permitted and caused to fall" whereby plaintiff was injured; that the elevator in its control and maintenance was wholly in charge of the defendant, and wholly within the knowledge of defendant; that plaintiff had no duties in connection with the elevator except in carrying or assisting to carry freight thereon for defendant, and had no duty in its care and maintenance; was ignorant of the details of its construction, and of the parts and machinery, and had no means of knowledge of the cause or causes which resulted in its falling; and that all such information was in the possession of defendant, and its servants in charge of its maintenance and upkeep.

After a general denial, the answer alleged that a part of plaintiff's duties was the moving of materials from the ground floor to the second floor, and that at the time of his accident, he negligently placed a long board or timber, standing it upright, in the elevator, which, so placed, extended upward above the framework of the elevator; and thereupon, plaintiff negligently got upon the elevator, contrary to a rule given him not to ride upon it while carrying materials thereon, and so carelessly operated the elevator as to cause said upright plank or timber to strike against the operating machinery at the top of the elevator, and cause it to stop, and that thereupon plaintiff jumped off the elevator, whereby he was injured.

The plaintiff was between nineteen and twenty years of age at the time of his injury, and had been in the employ of defendant for about five months. Before that time, he had lived upon a farm. On behalf of plaintiff no other witness than plaintiff himself testified concerning the circumstances under which he was injured. He testified that his duties for defendant were to do anything "they wanted me to do;" that he worked under all of them, that is, under all of the defendant's employees except one, a boy younger than himself; that he knew nothing about the elevator or its machinery except to start and to stop it; that he had seen other elevators, but had not seen any other elevator like this one; that during his five months of service to defendant, he had ridden on this elevator carrying materials thereon often, probably a thousand times during that period. He testified that he did not know what caused the elevator to drop or fall, and had no way of knowing what caused it to do so.

One of plaintiff's attorneys testified that before the suit was filed for plaintiff he went to defendant's place of business, and asked to be permitted to see the elevator, and that the persons in charge of the place refused to allow him to go back and see the elevator; and, that two or three days thereafter he went again, and defendant's manager refused to allow him to go back to the elevator and make an examination. The plaintiff testified that on the morning of his injury, at about ten o'clock, he and Mr. Penland, one of defendant's employees, were moving some things from the first to the second floor, on the elevator, and that he was working under the orders and directions of Penland; that Penland loaded on the elevator a contrivance, consisting of three pieces of board fastened together, forming "something like wooden door steps," which had been used in the sales room for setting articles thereon, displayed for sale; that this contrivance or arrangement of boards, was about five feet long, and was set on and in the elevator; that when so set, it was not more than five feet high; that he got on the elevator with Penland at the request of Penland; that Penland started the elevator by pulling the cable; that the elevator "went up all right for a ways, and all at once it began to fall;" that the last thing he remembered he was standing on the elevator getting ready to jump; that then the elevator was about four feet from the second floor; that the next thing he knew after that, he was in the hospital. The ground floor was of concrete, and in plaintiff's fall upon it he sustained a fractured skull.

Penland, called by defendants, testified that they were moving some things from the first to the second floor; that he and the plaintiff put on the elevator three boards, which were cleated and held together edge to edge; that in this form they were of the width of about thirty inches, and that these boards were ten feet and five inches in length; that this conjuncture of boards was set on end in the elevator and that he·(Penland) so arranged it that he thought it would not strike the beams supporting the wheels and machinery at the top, but that he miscalculated the space; and when the elevator ascended, the plank struck the beams at the top, broke them, and displaced the wheels and machinery at the top, causing the elevator to fall. It did not fall completely to the ground floor, but the misalignment of the machinery appears to have caused it to lock, and to stop before reaching the ground floor.

The plaintiff, on his cross-examination, was shown a board and asked if it was the one placed upon the elevator at the time in question by Penland, and said, it was not; that the board so shown to him was not fixed like the one put on the elevator, and was about twice as long. Several of defendant's other employees who were in the building at the time of plaintiff's injury testified that, when their

attention was directed to it by the occurrence of the accident, a board ten feet in length was standing in the elevator, and that the platform was about six feet above the ground floor; that the board was one which had been used in the display room, and had holes in it to hold and display closet bowls.

Defendant introduced a machinist, who testified that after the accident to plaintiff and on the same day, he was called to repair the elevator; that he found the supports and parts of the frame, which held in proper place and alignment the wheels and machinery, had been split, and pushed out of position, and the elevator was out of the guides controlling its motion up or down. He said the center piece of the frame was split, and a piece pushed out, and certain screws had been pushed up out of their holes. In his examination he made the following statement: "It looked like to me that there had been something put on the elevator and pushed the top of it out. It could not have gone no other way." He repaired it by replacing and bolting the displaced pieces, and supplying a new piece "that went across to hold that sheave wheel up." There was no testimony of any observation by any one of there being any derangement of the elevator appliances, prior to the time plaintiff was injured, nor, on the contrary, of an observation that there was no derangement; but the existence or non-existence of any defect or derangement prior to the time of plaintiff's injury, and the cause of such, if any, rests upon inference under the positive and opposing statements of plaintiff and of other employees. The plaintiff stated positively that the doorstep-like article of plank, placed in the elevator, was not more than five feet high, and the others stated that the article so placed was the board or joined and cleated boards ten feet and some inches in height, and with these statements, is the opinion or conclusion of the machinist as to the manner in which the derangement was brought about. According to the testimony, the distance of the frame-work and beams at the top, above the second floor, was such, that if the article placed in the elevator stood up only five feet high, it would not reach said beams, but if it was something which stood upright ten feet in height, it would come in contact with said beams and frame, before the platform reached the second floor.

Several pictures of the elevator were put in evidence. The witness Penland pointed out in one of these the plank—part of the top frame work—which he said was struck by the ten-foot board, and split and loosened. It was not shown that the ten-foot board, brought into court, bore any marks of contact with the plank or beams at the top.

Under the rule, in passing upon the demurrer to the evidence, the plaintiff's testimony, including that as to the character and height

of the article placed in the elevator, is to be taken as true. [State ex rel. Fulton Iron Works v. Allen, 289 S. W. 584-5; Bond v. St. Louis-San Francisco Ry. Co., 288 S. W. 777; State ex rel. Railway v. Daues, 290 S. W. 425.]

Obviously, the jury rejected the statement that the board ten feet in height, exhibited in court, was the article which was placed in the elevator making the ascent, at the time plaintiff was injured, and also rejected the explanation given by defendant that the machinery was thrown out of position by contact with that board. The testimony of defendant's manager was that the elevator had been inspected occasionally by the inspector of the Casualty Company, and the last time it was so inspected was about sixty days before the time of plaintiff's injury. He said nothing as to whether any one of defendant's employees was charged with the duty of inspecting it, or of its care and maintenance. Frank J. Flynn, one of defendant's employees, testified that he had never inspected the elevator except "casually;" that it had been inspected by a "regular inspector," but he did not know how often the inspector would come. Asked if there was any one employed about the place whose duty it was to inspect the elevator, he said there was; that it was the duty of Philip Hubbard Bell, a colored man, an employee of defendant, to inspect the elevator. He further testified that Bell "was really a shipping clerk—had charge of the back room—and he could not say that Bell was a machinist or electrician." Bell was called by defendant and testified, but said nothing upon this point, nor was he asked whether he made an inspection of the elevator at any time. Employees of defendant other than plaintiff used the elevator in moving things between the floors of the building, and sometimes others in conjunction with the plaintiff so used it, as upon the occasion when plaintiff was injured.

Under the rule governing in determination of a demurrer to the evidence, the case is to be considered upon the assumption that the elevator fell, not because a board struck and displaced the machinery, but because of some condition already existing. Counsel for defendant urge that the rule, *res ipsa loquitur*, does not apply, upon the ground, that under the evidence the plaintiff and his associates knew, or had an opportunity to know, of the defect in the machinery which caused his injury, and also that the elevator was not an appliance peculiarly within the knowledge and control of defendant, of which plaintiff was ignorant and with which he had nothing to do. Essentially the contention is that the evidence viewed from the standpoint of the plaintiff did not make a prima-facie case. The reasons for the rule; limitations upon its application in cases between master and servant; the difficulty frequently met in applying it in a given case; the fact that it is a rule not a favorite with the courts; and is

not recognized by some courts, have been stated many times by this court, and the courts of appeals. [Blanton v. Dold, 109 Mo. 64; Klebe v. Distilling Co., 207 Mo. 480; Removich v. Construction Co., 264 Mo. 43; Sabol v. Cooperage Co., 313 Mo. 527; Hamilton v. Railroad, 123 Mo. App. 619.] The foregoing cases are cited in the brief for defendant, with many others, and yet others in the brief for the plaintiff, all of which need not be mentioned here, and only a few of them can be reviewed. From the discussions in these cases is gathered the import of the rule, as between master and servant, and as applied in a given case, which is, that under the facts proved, the injured party has made a prima-facie case, without direct proof of negligence. A prima-facie case is made only where the accident is of a kind which does not ordinarily occur, except from some fault of the master himself or of his servants, or, from some imperfection in the institution of the machine or appliance in question, and only where also the nature and circumstances of the occurrence indicate that the injured party is not in a position to explain the cause, but the party charged, by reason of his greater opportunities to know, is thereby in a position to explain it and to show himself free from negligence, or, at least, to overcome the presumption held to have arisen by reason of the nature and circumstances of the occurrence resulting in the injury. Since the rule is one founded upon reason, arising out of necessity, or inability of the injured party to show the specific negligence of the party charged, the reason for the rule must be found in the particular case as a prerequisite to enforcement of the rule in that case.

In Sabol v. Cooperage Co., supra, the plaintiff's injury was caused by the falling upon him of a large pile of barrel staves, standing near the place at which he was working. The evidence showed that he had been in the employ of defendant for eighteen years; that while his work was that of a culler of the staves, he had at times assisted in making piles, and was familiar with the manner in which that work was done; that also, the particular pile which fell upon him had been made by defendant's foreman and employees only two or three days before his injury, and while he was working near by, and where it was within his view. In that case the petition alleged nothing more than that the pile was insecure, and the evidence showed nothing other than that the pile fell, and injured the plaintiff. In that case the fact that the plaintiff knew, or could have readily procured the names and addresses of the employees who piled the staves, and called them to testify as to the manner of making the piles, was adverted to as showing why there was no reason of necessity for application of the rule.

In Removich v. Construction Company, supra, there is a review of many prior decisions of this court and decisions of other courts.

In that case the plaintiff was digging earth in a trench for a sewer. The earth was placed in a bucket attached to a steel cable by means of a hoisting apparatus, run by steam. The bucket was let down into the trench, and when filled with earth was conveyed to another point in the line of sewer, where the concrete sewer had been laid in the trench, and the dirt was there emptied for the purpose of filling up the excavation. While one of such buckets was being so conveyed over the plaintiff's head, the cable broke, allowing the bucket to fall upon the plaintiff and injure him. The case was decided upon the question of the sufficiency of the plaintiff's petition, which merely alleged that the occurrence arose through the negligence of the defendant. The allegations were held to be insufficient, in that, there was no attempt to set out any reason for the breaking of the cable, but only that it broke, and the bucket fell and the plaintiff was hit and hurt. Pursuing the discussion of the insufficiency, it was said at page 57: "It may have broken from having been concededly overloaded by plaintiff, or by his fellow-servant; it may have broken from a latent undiscoverable defect; it may have broken because of a sudden jerking or unnecessarily hard movement, of the hoisting engine; it may have suddenly become defective, too recently to thrust on defendant the legal duty of discovery; any of these things, or even others, may have operated to have produced plaintiff's injury. Therefore, it was, we think, the duty of plaintiff to state such affirmative facts, touching the manner of the happening of the casualty, as to negative by fair inference the theory that it occurred by reason of some efficient defensive cause precluding as a matter of law the liability of defendant." Under the allegations of the petition, it was said, at page 48, the case involved the doctrine that "in its strict and distinctive interpretation which allows a presumption of negligence to arise from the mere fact that an accident happened when coupled with the allegation of its bare physical cause wholly unassisted by any circumstances tending to show any fault of omission or commission on the part of the master, as the responsible human cause of the accident in question." The case as presented by the petition stood upon the bare fact that the cable broke. There is no fact stated or inference to be drawn from the facts stated as to lack of knowledge by the plaintiff, nor direct allegation, nor circumstances necessarily carrying the inference, that plaintiff did not know as much about the cause of the breaking as was known by the defendant.

In Klebe v. Distilling Company, supra, the plaintiff was injured by the fall of an elevator caused by the breaking of the cable from which the car of the elevator was suspended. The cable broke in the basement of the building, near the cylinder around which it operated. In that case the elevator had many points of similarity

with the one here in question. The decision of the case seems to turn chiefly upon a conclusion drawn from the evidence that the elevator was not *peculiarly* within the knowledge and under the control of the defendant, and upon the further conclusion that, in the light of the facts, the defendant was not in a much better position to explain the cause of the accident than was the plaintiff. The case was disposed of upon the evidence for plaintiff alone, and it is stated in the opinion that the evidence showed that the master had nothing to do with the elevator, or its operation, excepting by and through its servants and employees, one of whom was the plaintiff, who, it was said, had as much knowledge of its operation and movements as any of them. In another portion of the opinion (l. c. 494) it is stated that "the engineer who had control of the elevator and cable inspected them once or twice a week prior to the date of the accident, and that about three weeks before that, it was inspected by the city inspector, and that he posted upon the elevator a certificate of his inspection." For that reason also it was held that the demurrer to the evidence had been properly sustained. The conclusion that the plaintiff who went up and down in the elevator, but had no other duty connected with it, knew as much about it as any one else, seems a violent assumption in view of the other finding of fact that the plaintiff had nothing to do with the care of the elevator, and there was an engineer employed who had the care and control of it, and customarily inspected it once or twice a week. The assumption, however, seems to have been made upon the basis that plaintiff's co-employees were all living, and the nature of the causal negligence, if any, could have been ascertained from them, and it was necessary that the plaintiff should make such ascertainment of facts.

Hamilton v. Railway, 123 Mo. App. 619, is another case cited for defendant, in which it was held the rule did not apply between the master and his servant. The decision preceded the decision in the Removich case, and the reasoning in the opinion in the latter case runs closely with the line of reasoning in the Hamilton case. In the Hamilton case, the plaintiff was a brakeman and was endeavoring to set the brake on a car. The testimony was that he gave the brake wheel a preliminary turn to see if it would show itself to be in working order by tightening up. It appeared to be in good condition and he began to set the brake. As he threw or swung the weight of his body in an effort to set the brake, something connected with the brake appliance suddenly gave way, so that the wheel revolved rapidly, and he was thrown from the top of the car to the ground and injured. A wreck occurred shortly afterward, and the wreckage was burned, and there was no means of ascertaining what caused the wheel and rod to revolve so suddenly and loosely, nor was there

any way to ascertain what was defective, or whether anything was. Under those circumstances it was said that it might have been the brake clasp itself, or the chain, or the brake-rod, or the wheel at the top, with which the brake was set. It is further added in the opinion that the injury of which the plaintiff complained might have been the result of his negligence or his own misadventure; that his hands might have slipped; his hold on the wheel might have unconsciously loosened as he swung his weight in his effort to tighten the brake; or that as he swung his weight around, his foot might have slipped and caused his fall. In view of all these contingencies it was held that the lack of evidence could not be supplied with a presumption in plaintiff's favor. It was said, at page 627; "The occurrence here in controversy was not of such nature as to be classed with those which themselves show they must have happened from a negligent cause for which defendant would be chargeable."

In the Klebe case, an instance of the falling of an elevator, it was conceded that the case fell within that class of cases, which according to common experience does not usually occur except from some negligence of the master himself or that of his servants. But, as has been already stated, the decision went, in part at least, upon the theory that it could not be said that the instrumentality was *peculiarly* within the knowledge and control of the master or that the master was in much better condition to explain the cause than the injured party was.

In the case at bar, the claim that the ten-foot board stood up in the elevator, being eliminated, the other facts repel the inference of any negligence by the plaintiff and Penland. Under the facts here shown, the elevator was started in the usual way, and went up six or eight feet in the usual way, then suddenly stopped and fell. Under this evidence the plaintiff and Penland, after the latter pulled the cable which started the elevator upward, merely stood on the platform, and nothing more was done, nor was there anything to be done.

In Blanton v. Dold, 109 Mo. 64, the rule was held to apply to the case made by the plaintiff under the facts developed. The plaintiff was operating a contrivance for grinding cakes or masses of dried blood, called a "blood mill" in a large packing establishment. The machine was operated by steam power from the general supply of power for the whole establishment. The blood mill was set in motion, or, when in motion, was stopped or disconnected from the power, by means of a lever, and the movement of the lever placed the belting on a fixed or on a loose wheel, as desired by the operator. Two ropes were attached to the lever, and by pulling one of the ropes the lever would respond so as to throw the belting upon the fixed pulley or wheel, and start the mill; and, by pulling the other rope, the lever would be pulled back again so as to carry the belt-

ing upon the live or loose wheel and stop the mill. While it was stopped, and while the plaintiff was removing a nail which had become inbedded in the frame-work so as to interfere with the grinding machinery, the machinery started up suddenly and cut the plaintiff's hand, injuring it. The unexpected starting of the mill was not attributable to any movement of the rope. There was evidence that the mill had started on two or three former occasions without any appropriate movement of the ropes, but plaintiff did not learn' of that until after the accident. In that case, it was held that the plaintiff was unable to specifically assign the cause of the sudden movement of the machinery, and that several explanations of its action based on principles of mechanics which were advanced, fell short of accounting for it definitely. In that state of the evidence, the court said, at page 75: "It is sometimes a close question to determine what inferences from facts may reasonably be drawn; but it is enough for our present purpose to say that we are of the opinion that where such a machine as this starts into motion, entirely out of the usual manner of its operation, as shown in the case at bar, its action affords prima-facie evidence of some want of care in its original construction or then condition, calling for explanation from the party responsible therefor."

In Scheurer v. Rubber Co., 227 Mo. 347, the plaintiff's work required him to put sheets of rubber between two large rollers of a machine. In adjusting a sheet of rubber between the roller his fingers were caught. He took hold of an emergency brake bar designed to lock and stop the rollers. It failed to operate and his arm was pulled between the rollers. Three days after the accident, the examination disclosed a part of the electric lock was broken, which prevented the lock from operating. It was held that failure of the emergency brake to operate was prima-facie evidence of want of care in its construction or then condition, and it was for defendant to rebut the evidence of want of care on his part. The circumstances tending to show need of inspection and neglect of it were adverted to and emphasized.

In Eckhardt v. Wagner Electric Mfg. Co., 235 S. W. 117, the plaintiff was injured by the sudden action of a machine operated for stamping certain metal materials. He was the foreman of that department. In the operation of the machine by which he was injured, a punch fixed in a heavy cross-head came down upon the metal to be stamped. While plaintiff and others were endeavoring to ascertain the reason why a fly wheel, connected with the operation, would not turn, and the others with him undertook to turn it by hand, the cross-head fell upon plaintiff's hand. It was later found that certain connecting rods, which supported the cross-head, were broken. There was conflicting testimony as to what was done by

those with him, and as to the cause of the falling of the cross-head. In the opinion, it was said, at page 119: "There is, in fact, no satisfactory explanation one way or the other as to what caused the cross-head to fall." The petition in that case charged general negligence. Upon the objection to that, it was said in the opinion, at page 118: "It is also contended that the plaintiff knew, after his injury and before this suit was brought, that the connecting rods were broken at the time the cross-head fell, and that the breaking of the rods caused the fall, and that plaintiff's knowlege of same precluded him from pleading general negligence and thus invoking the doctrine of *res ipsa loquitur*. Considered purely from the standpoint of a substantial fact, plaintiff's knowledge in this regard, at best, was but hearsay, and he was not permitted to obtain more definite knowledge sufficient to authorize a specific allegation in his petition that the breaking of the rods was the moving cause of his injury. The law laid upon him no duty to rely upon the defendant for such information as he might deem necessary to the statement of his cause of action. It was his duty to plead those things which were, in the contemplation of the law, within the scope of his cognizance. An allegation of general negligence, therefore, under the facts in issue, was in compliance with that duty. We so held in Myers v. Independence, 189 S. W. 816, and no facts appear in the instant case to authorize a conclusion different from that reached therein."

In the case at bar, the testimony of defendant's manager, on cross-examination, corroborated the testimony of plaintiff's attorney to the effect that defendant denied to the attorney access to the elevator. The manager held the view that the plaintiff must have an order of court for that purpose. After the suit was brought, plaintiff took depositions of certain of defendant's employees and there was developed the explanation that the ten-foot board was in the elevator at the time it ascended with plaintiff and Penland.

Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994, is another case to which reference may be made. In that case the plaintiff operated a machine, which included a knife, which descended and cut the paper in books placed in the machine. The character of the machine and its manner of operation are fully set forth in the opinion by RAILEY, C., in Division One. It is enough to say that the mechanism was described as such that normally, after the knife had descended and cut the books, it would rise automatically to its original position. The lever, which was used to put it in motion, would come back to its original position, and a safety handle contrivance attached thereto, would lock the lever. On the occasion of the plaintiff's injury, the knife came down suddenly and unexpectedly upon plaintiff's fingers, and without the lever which set it in motion being touched by the plaintiff, and in a manner which it had never done be-

fore. The testimony of the plaintiff was that he had no personal knowledge of the machinery, but was simply an operator, and ignorant of the details of the construction of said machine.

Virtually all of the cases of like character decided by this court and the courts of appeals, and many from other jurisdictions, are referred to in the opinion. There was testimony of experts and others as to the possibility of the operation of the knife under the circumstances described by the plaintiff, and evidence in the case of a lack of care of defendant in the inspection of the machine. In view of the nature of the occurrence, and the circumstances attending it, it was held that the rule applied.

Our conclusion is that the application of the rule is warranted in the case at bar.

There is no contention that the verdict was excessive, nor other assignment of error, and the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.