HUGH CRUCE, Respondent, v. GULF, MOBILE AND OHIO RAILROAD COMPANY, a Corporation, Appellant.—No. 40936.—216 S. W. (2d) 78.

'Division Two, December 13, 1949.

Motion for Rehearing or to Transfer to Banc and to Amend Opinion

Overruled, January 7, 1949.

*Wayne Ely, Robert C. Ely* and *Ernest D. Grinnell, Jr.,* for defendant-appellant; *D. S. Wright* of counsel.

*Charles P. Noell* and *John H. Haley, Jr.*, for plaintiff-respondent.

[79] WESTHUES, C.—Plaintiff, Cruce, obtained a verdict in the sum of $45,000 against appellant, Gulf, Mobile and Ohio Railroad Company, for personal injuries sustained when a cable on a coal chute broke permitting the pan of the chute to fall on him. Appellant's motion for new trial was denied, conditioned on plaintiff filing a remittitur for $10,000. Plaintiff complied and judgment was entered for $35,000. The railroad company appealed.

The evidence reveals the following: Plaintiff began working for the railroad in June, 1906, in the State of Tennessee, as a section laborer. Later he became foreman and continued in that capacity for thirty years. In December, 1945, he was given a job as foreman at a coal chute in the yards in Union City, Tennessee. Three men, including plaintiff, tended the coal chute, each working eight hours per day. The chute was located between two tracks, one a main line track and the other a passing track. When engines drawing trains required coaling at this point they were stopped at the chute and the man operating it would get on the tender of the engine and pull the pan down over the tender by means of a rope. The coal was then permitted to roll over the pan and into the bin of the tender. The pan was

held by a wire cable with counterweights attached to the other end thereof, the cable passing over a pulley. On May 30, 1946, an engine was stopped at the chute and plaintiff prepared to put coal therein. When he pulled on the rope to lower the pan the cable broke and the pan fell, striking plaintiff and resulting in serious injuries. He was taken to a hospital where he remained for months.

Plaintiff relied on the res ipsa loquitur doctrine and defendant contended the doctrine was not applicable because the coal chute was under plaintiff's control and not under the control of defendant. Defendant also claimed that if there was a defect in the cable it was a latent defect that could not have been discovered by inspection and therefore the breaking of the cable did not give rise to an inference of negligence. We will dispose of these points and then consider alleged errors as to procedure.

■ Defendant says the res ipsa loquitur doctrine does not apply because the evidence reveals it, defendant, did not have exclusive control or charge of the chute and did not possess superior knowledge or means of knowledge as to the cause of the occurrence. Defendant further says that it was plaintiff's duty to inspect the cables and report any defects therein. Plaintiff testified that he knew nothing about cables and was not instructed with reference thereto or that it was his duty to make such inspections. Defendant offered in evidence a deposition, taken on behalf of plaintiff, of a man named Stokes who had preceded plaintiff as foreman at the chute. This witness testified that he did not inspect the cables and had had no instructions to do so. He further testified that while he was foreman the cables were changed, the work having been done by the carpenter gang known as the bridge and building department. From this evidence it can be inferred that someone other than the men working at the chute determined when the cables needed replacing. The evidence also justifies the finding that it was not the duty of plaintiff to inspect the cables.

Sandy Smith, one of the men working at the chute under plaintiff, testified for defendant. He stated that he never noticed plaintiff, at any time, inspecting the cables or other parts of the chute. There was no evidence that the cables had been inspected by anyone during the time plaintiff worked there. Defendant offered no evidence as [80] to what caused the cable to break nor any evidence of a latent defect.

Plaintiff, up to the time he began work on the coal chute, had had no experience with cables and the evidence does not show he acquired any knowledge that qualified him to make inspections thereof. Mr. Schlesing, a building inspector employed by the City of St. Louis, testified on behalf of plaintiff. He stated he had inspected elevator cables and other cables used in buildings; also, that he had had occasion to determine the causes of cables breaking. He testified that

they break from various causes; that a break may be due to a weakened condition caused by rust or crystalization; also, that a pulley may be too narrow or a cable too small for the weight it has to bear. He testified that cables are tested for dry rot and to test them it is necessary to scrape the surface with a knife and to inspect the cable from one end to the other.

If this were a case of a passenger and carrier the res ipsa loquitur doctrine would without doubt be applicable. 45 C. J. 1208, Sec. 776; 38 Am. Jur. 999, Sec. 302; 10 Am. Jur. 366, Sec. 1623; Powell v. St. Joseph Ry., Light, Heat & Power Co., 336 Mo. 1016, 81 S. W. (2d) 957, l. c. 960 (4-7); Removich v. Bambrick Bros. Const. Co., 264 Mo. 43, 173 S. W. 686. The rule, however, is applicable in master and servant cases provided the facts of the case call for its application. 35 Am. Jur. 915, Sec. 498, also page 923, Sec. 503; Charlton v. Lovelace, 351 Mo. 364, 173 S. W. (2d) 13, l. c. 16 (1, 2); Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693; Sibert v. Litchfield & M. R. Co., 159 S. W. (2d) 612, l. c. 617 (5, 6); Terminal R. Ass'n. of St. Louis v. Staengel, 122 Fed. (2d) 271; Williams v. St. Louis-San Francisco R. Co., 85 S. W. (2d) 624, 337 Mo. 667.

Does the evidence in this case justify the application of the res ipsa loquitur rule? We think so. In Terminal R. Ass'n. v. Staengel, supra, the Circuit Court of Appeals, 8th Circuit, 122 Fed. (2d) 271, l. c. 273 (1, 2), ruled as follows:

"The rule is applicable if the thing causing the injury was, at the time, under the exclusive control of defendant and the occurrence was such as, in the ordinary course of things, does not happen if the one having such exclusive control uses proper care. (San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 98, 32 S. Ct. 399, 56 L. Ed. 680)."

In McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, l. c. 559, the same announcement of the rule was made with the following addition:

". . . the defendant possesses superior knowledge or means of information as to the cause of the occurrence."

See also 45 C. J. 1193, Sec. 768; Annotation, 59 A. L. R. 468.

Was the coal chute in the exclusive possession of the defendant railroad company? The answer must be that a jury was justified in finding so from the evidence. In Maxie v. Gulf, M. & O. R. Co., 356 Mo. 633, 202 S. W. (2d) 904, l. c. 911 (5, 6), the following was quoted with approval:

"The rule that the exclusive control and management of the appliance or thing causing the injury must be shown to have been in the defendant does not mean physical control, but refers to the right of such control . . ."

Was the breaking of the cable such, as in the ordinary course of things, absent negligence, does not happen? Here, again, we must say that the evidence justified the finding to that effect. Cables are used very extensively in elevators installed in buildings for the carrying of passengers and freight. They are constructed by weaving numerous wires and therefore latent defects are not as likely to be present as in chains. It was in evidence that inspections timely made would disclose deterioration such as rust, wear and crystalization. The evidence justified an inference of negligence. 59 A. L. R., Ann. at page 468; 35 Am. Jur. 922, Sec. 502. In 35 Am. Jur. 921, Sec. 501, we find the following:

"Many cases are to be found which have permitted an inference or presumption of negligence from the mere fact that the chain, rope, belt, or wire broke or parted, or perhaps from that fact in connection with its bare physical causes without the aid of any circumstances tending of their own [81] force to indicate that the master was in fact negligent in the particular instance."

In a res ipsa loquitur case a plaintiff is not required to present evidence to overthrow every reasonable theory of nonliability on part of the defendant. The facts proven must, however, justify an inference of negligence. Terminal R. Ass'n. of St. Louis v. Staengel, 122 Fed. (2d) 271, l. c. 275, 276 (8, 9). If a plaintiff in such a case were required to produce evidence which would exclude every reasonable theory but that of the negligence of the defendant the doctrine would be annihilated. The doctrine ". . . is a rule of evidence peculiar to the law of negligence and is an exception, or perhaps more accurately a qualification, of the general rule that negligence is not to be presumed but must be affirmatively proved." 45 C. J. 1196, Sec. 769. See also McCloskey v. Koplar, supra; 45 C. J. 1205, Sec. 773; Meade v. Mo. Water & Steam Supply Co., 318 Mo. 350, 300 S. W. 515, l. c. 517 (2-4); Savery v. Kist (Iowa), 11 N. W. (2d) 23. True, plaintiff testified that the cause of the pan falling was the breaking of the cable, however, for plaintiff to show why the cable broke would be difficult. Defendant asserted in its answer that there was a latent defect in the cable but offered no evidence to sustain that allegation. It was peculiarly within the power of the defendant to disclose the cause of the breaking. We hold the trial court did not err in submitting the case to a jury under the res ipsa loquitur doctrine.

Appellant in its brief says:

"The facts shown by the evidence neither speak of negligence of the defendant, or reasonably exclude any other hypothesis than that of the negligence claimed."

As to the first point, we have demonstrated and rule that negligence may be reasonably inferred from the facts shown. As to the second, that the evidence does not exclude any other hypothesis than that of

negligence, we hold that that is not the law under the res ipsa loquitur doctrine. There are expressions in a few cases that lend aid to defendant's claim. We find them mostly in cases where courts have, for various reasons, held the doctrine not to be applicable. In Charlton v. Lovelace, 351 Mo. 364, 173 S. W. (2d) 13, l. c. 18 (5), the following quotation was taken from Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. (2d) 702, 705:

" 'To make out a case for the application of the doctrine of res ipsa loquitur, the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed.' "

That statement, unless qualified in its application, is too broad. In the paragraph following the above quotation appears a quotation from 45 C. J. 1212, Sec. 780, as follows:

. " 'Where there are two or more persons or causes which might have produced the injury, some, but not all, of which were under the, control of the defendant or for which he was legally responsible, plaintiff, in order to invoke the doctrine, must exclude the operation of those causes for which defendant is under no legal obligation.' "

. Note that in the text quoted from Corpus Juris the question of control over the instrumentality was discussed and considered. Further on in the section it is stated:

. "However, it is not requisite, in order to invoke the doctrine, the plaintiff's case be such as to exclude every hypothesis but that of defendant's negligence, . . ."

In the Grindstaff case it was expressly held that the negligence in that case may have been attributable to a fellow servant's "negligence for which the master is in no wise responsible." For this latter reason the court held plaintiff had not made a case under the res ipsa loquitur doctrine. Neither the Charlton nor the Grindstaff case is authority for defendant's position. In each case the court held no case was made under the doctrine because plaintiff had not shown the exclusive possession of the defendant. In the case before us the fellow servant doctrine is not an issue.

We therefore hold that plaintiff made a case under the doctrine by introducing evidence which justified a finding, (a) that the occurrence causing his injury was such as does not ordinarily happen if due care is exercised; (b) that the instrumentality, in this case the coal chute, was under [82] the control and management of the defendant; (c) that the defendant possessed superior knowledge or means of information as to the cause of the occurrence. McCloskey v. Koplar, supra, 46 S. W. (2d) 557, l. c. 559, 92 A. L. R. 641, and authorities above cited.

When a plaintiff has established such a case a jury is warranted in finding for plaintiff on the theory that negligence may be inferred from the facts proven. It does not, however, as will be noted from

the authorities, supra, compel such an inference. Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815. This brings us to an assignment of error pertaining to instruction number one, given at plaintiff's request, which directed the jury to find for plaintiff if it found certain facts to be true. Note the wording of the instruction:

"The Court instructs the jury that if you find and believe from the evidence that it was not the duty of the plaintiff, Hugh Cruce, to inspect, maintain, repair or replace the counter-weight cables mentioned in evidence and that defendant had the exclusive management and control of said cables, then you are further instructed that it was the duty of the defendant to furnish and maintain said cables in a reasonably safe condition for plaintiff to use, and if you also find and believe from the evidence that the breaking of such a cable usually and ordinarily occurs only as the result of negligence, then your verdict should be in favor of the plaintiff and against the defendant."

We hold the instruction to be fatally deficient in that it did not require a finding of negligence. We are aware and have in mind that a finding of negligence is not necessary in cases where an instruction requires a finding of facts which are equivalent to a finding of negligence. The above instruction, however, simply required a finding of facts which would justify an inference of negligence but would not necessarily compel such an inference. The instruction, before directing a verdict, should have required a finding that plaintiff was in fact injured as the result of negligence. In the Sweeney case, cited above, we find the following by the United States Court which is applicable. It was quoted in the Charlton case, supra, 173 S. W. (2d) 13, l. c. 17 (4).

" 'Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict.' "

We hold the instruction prejudicially erroneous.

Respondent says that the point as to instruction number one was not preserved for review. The record shows defendant objected to instruction number one and excepted to the action of the court in giving the instruction. In the motion for new trial defendant asserted that the court erred in the giving of this instruction. In the brief, under points and authorities, defendant states the court erred in giving instruction number one because it did not require the jury to find that defendant was negligent in any respect, citing authorities. We deem the question preserved for our review. The state legislature in 1947 amended the rule which required specific objections to

be made to instructions before they were given or read to the jury. See Laws 1947, page 228, Sec. 122. Under the terms of the amended section specific objections to instructions at the trial of the case are no longer necessary.

Respondent also filed a motion to dismiss the appeal in this case for the reason that appellant violated Supreme Court Rule 1.08, in that the statement of facts in appellant's brief is not a fair and concise statement of the questions presented. We read the evidence in the record and then read the statement carefully with the above rule in mind. The statement, while not a model, is not so deficient or inadequate as to justify a dismissal of the appeal. It is sufficient to inform the court of the facts [83] in the case and the issues presented on this appeal. We deny the motion to dismiss.

Since the case must be remanded for retrial it will not be necessary to discuss a number of other points made by appellant, such as alleged error in the selection of a jury, alleged prejudicial remarks made by the trial court and the excessiveness of the verdict.

The judgment is reversed and the cause remanded. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, J.*, and *Tipton, P. J.*, concur; *Leedy, J.*, absent.