**HANSON**

**v.**

**DALTON COAL & MATERIALS CO. et al.**

No. 21948.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1954.

898

Sapp & Bear, David V. Bear, Columbia, for Charles W. Hanson.

Edwin C. Orr, Columbia, for Herbert A. Coats.

Boyle G. Clark, Robert C. Smith, Jr., Columbia, Clark & Becker, Columbia, of counsel, for Dalton Coal & Materials Co.

DEW, Judge.

The plaintiff (one of the appellants in this appeal) brought this action for personal injuries and property damage alleged to have arisen out of a collision on April 10, 1952, between his truck and a truck owned by defendant Herbert Coats, on State Highway No. 40 at a point about three miles west of Columbia, Missouri. A verdict for $3,263.46 was found in favor of plaintiff and against defendants Coats and the Dalton Coal and Materials Company, a corporation, with which corporation Coats had a contract to haul sand to its plant in Columbia. The jury found the issues in favor of defendant Lloyd A. Cunningham, who was driving defendant Coats' truck at the time of the collision.

The court later sustained the motion of the defendant Dalton Coal and Materials Company (hereinafter referred to as the Dalton company) to set aside the verdict and enter judgment in its favor in accordance with that defendant's motion for a directed verdict offered at the close of all the evidence. Also, the court overruled a similar motion by the defendant Coats and his motion for a new trial. The judgment finally entered was for the plaintiff in the above amount against defendant Coats only. The plaintiff has appealed from the judgment in favor of the defendant Dalton company, and the defendant Coats has appealed from the judgment against him.

It is alleged in the petition that at 11:45 a. m. on April 10, 1952, the plaintiff was driving his 1949 Reo truck westward on Highway No. 40, with trailer attached, about three miles west of Columbia, on a clear, dry day and on a long, level straight stretch of that highway and on the right side of the road; that his truck and trailer were loaded with shelled corn; that defendant Coats's 1947 GMC truck approached from the west and on its right side of the road and was loaded with sand; that the GMC truck had a freight carrying capacity in excess of one and a half tons; that it was being driven at the time by the defendant Cunningham, the agent, servant and employee of defendant Coats; that it was under the exclusive possession, management and control of the defendants, and, by procurement of defendant Dalton company, was then engaged in the business of hauling property of that defendant for hire contrary to the laws of the state and rules of the Public Service Commission as pleaded.

The petition further states that the defendants so carelessly and negligently maintained, managed, controlled and operated the Coats truck that when it approached plaintiff's truck, as aforesaid, the left front wheel of defendant's truck came off, causing that truck to veer across the westbound traffic lane so as to cause plaintiff's truck to collide with it and to cause the damages set forth, as a direct and proximate result of said carelessness and negligence. It was further alleged that at the time in question, defendant Coats had not obtained from the Public Service Commission a permit to operate his truck as a contract hauler or as a common carrier, nor obtained and filed a liability insurance policy or bond approved by the Commission, nor displayed any Public Service Commission's permit number on his truck, with other markings, all as required by the several statutes in Chapter 390, RSMo 1949, V.A.M.S. It is further averred that defendant Dalton company at all times knew that defendant Coats had not complied with the above statutory requirements and that he had no PSC permit to so operate the truck, and was unlawfully so operating the same, and aided and abetted

defendant Coats in such violation of the law, whereby said defendant Dalton company became liable for the unlawful acts and conduct of Coats and his agents, servants and employees while so operating said truck.

The controversial allegations of the petition were put in issue by the answers, together with pleas of contributory negligence.

Sections 390.061 and 390.126, as amended in 1951, provide that, with the exceptions not herein involved, no person shall engage in the business as a contract carrier in intrastate commerce on any public highway of the state without a permit issued by the Public Service Commission, and until public liability insurance policy or bond has been filed with and approved by that Commission. Section 390.130, as amended, in 1951 now Section 390.131(1), provides, among other things, that the rules of the Public Service Commission shall require every motor vehicle and all parts thereof to be maintained in safe and sanitary condition at all times. Section 390.171 declares any person guilty of a misdemeanor if he, as owner, officer, agent or employee of any motor carrier, or any other person, violates or fails to comply with any of the provisions of Chapter 390, or fails to observe or comply with any order, decision, rule, direction, demand or regulation of the Public Service Commission, or who procures, aids or abets in any such violations or noncompliance. Rule No. 16 of the Public Service Commission prohibits, among other things, and with certain exceptions not applicable here, the issuance of a certificate or permit to any intrastate motor carrier of property until such applicant shall furnish a liability insurance policy covering such motor vehicle or trailer in the amounts and in the form as prescribed in that order. Rule 26 requires that a vehicle so licensed shall display on such vehicle and in the prescribed form and type the serial number and the empty weight and actual load capacity of the vehicle. Other rules require insurance policies to be approved by the Commission in amounts according to weight and capacity as set forth, or satisfactory proof of financial ability to protect the public against loss or injury growing out of the operation of the vehicle.

According to plaintiff's evidence he was engaged in buying and selling grain and was returning from Iowa, where he had bought a truck and trailer load of shelled corn and was en route westward to Boonville, Missouri. When reaching a long, level, straight, dry stretch of road on Highway 40, about three miles west of Columbia, and while traveling about 35 or 40 miles an hour, he noticed the Coats GMC truck approaching from the west "crowding" the black center line of the highway. When within twenty feet of his truck, the left front wheel of the approaching truck came off, crossed in front of him and the GMC truck veered instantly to the left, crossed in front of plaintiff's pathway and plaintiff's truck collided broadside with defendant's GMC truck, causing the personal injuries and property damage claimed. Before the wheel came off it appeared to plaintiff it was wobbling somewhat. The GMC truck was at the time driven by defendant Lloyd Cunningham, a young man nineteen years of age, a brother-in-law of Coats, and was then hauling a load of sand from Rocheport to the Dalton plant at Columbia, Missouri, a distance of sixteen miles. For several months Coats had been hauling sand for the Dalton company at fifty cents a ton, which work constituted most of Coats's business at the time. He carried public liability insurance, but had not filed any such policy with the Public Service Commission, nor did he have a carrier's permit from that Commission and testified he did not think he was required to obtain one. He had no display on his cab of any serial number and other data required by the rules of the Commission.

Defendant Coats, called as a witness by the plaintiff, testified that it was not customary for dump trucks engaged in his kind of business in his community to obtain such a license, nor to meet the other requirements of the statutes and regulations cited. He testified that he had his truck serviced by a reputable garage about a month prior to the accident, at which time the wheels

were taken off, the bearings checked and repacked with grease. The truck had been driven about 500 miles since it was so checked and it had operated "as good as new". He said he checked the truck for heating on the morning of the accident. There was evidence that the spindle had twisted off. A great volume of testimony was introduced as to what might cause the spindle to heat and to twist off, such as lack of lubrication or improper lubrication, or an adjustment that was too tight or to loose. There was evidence that wheels operate for different distances under such conditions before trouble appears. Experts testified that the only way to examine the bearings is to take off the hub cap and to remove them. They stated that the bearings should be greased every 5,000 to 10,000 miles. One witness for plaintiff testified that the rollers of the left front wheel of the Coats truck, after removal, indicated they had not been greased. The plaintiff testified he did not know what caused the wheel on the Coats truck to come off.

The evidence showed that the Dalton company was a large concern, engaged principally in the manufacture of concrete blocks; that it operated four Ready-Mix concrete trucks of its own; that sand and rock are its principal raw materials and most of the sand was procured from quarries at Rocheport and Boonville; that its superintendent, formerly in the trucking business, had worked for the company for 22 years; that, among other duties, he "once or twice" weighed the sand truck as did other employees of the company, as it arrived at the plant; that a person weighing the truck could see the cab from the window of the office; that he contracted with Coats for the hauling of the sand at 50 cents a ton, which was five cents a ton more than the company paid former haul-ing contractors; that he knew that the Coats truck had a freight-carrying capacity of one and a half ton; that he did not know at that time, nor since, until this action was brought, that Coats had no PSC permit to operate it, never discussed the matter with him and never noticed what was displayed on the cab of the truck; that he

had no part in the unloading of the sand from the Coats truck; that he did ask Coats at one time out of curiosity if he carried public liability insurance; that he had seen displayed on some trucks of other carriers PSC serial numbers and other data; that he had once been told by a highway patrol-man that it was not necessary to have PSC permits for haulers of sand and dump trucks; that nothing had ever been said to him about permits for other such trucks hauling for the company; that Coats hauled for other customers as well as for the Dal-ton company; that witness had employed trucks without PSC permits since this ac-tion was brought. There was other evi-dence that dump trucks used in the com-munity for similar purposes displayed no signs of a PSC permit.

The plaintiff asserts that he pleaded and proved a case against defendant Coats un-der the res ipsa loquitur doctrine; that the jury's verdict in favor of defendant Cun-ningham in no way affected the liability of defendant Coats and the Dalton company; that he pleaded and proved a conspiracy between Coats and the Dalton company for Coats to operate his GMC truck at the time and place in question without obtaining a PSC permit and without complying with the other requirements of the law; that the Dalton company is therefore jointly liable with the defendant Coats for damages arising out of the collision while such truck was being so unlawfully operated.

We shall turn our attention first to the plaintiff's appeal from the judgment entered by the court in favor of the Dalton com-pany. The first three assignments of error under that appeal are, in effect, that such judgment was error because (1) defendant Coats had unlawfully operated his truck without a PSC permit and unlawfully failed to comply with other requirements of the statutes and regulations; (2) that defend-ant Dalton company is presumed to have known the law; (3) that there was suffi-cient circumstantial evidence to submit the issue of a conspiracy between Coats and the Dalton company to operate the truck un-lawfully; that, therefore, the negligence of Coats is imputed to the Dalton company

and each is jointly and severally liable for the damages caused by the other while engaged in the performance of their contract.

The charge of unlawful conspiracy against the defendant Dalton company is not the gist of this action against that defendant. It is merely a circumstance which, if pleaded and proved, would impute to that defendant joint and several liability for the negligence of its co-conspirator while in the performance of an act pursuant to the conspiracy. Seegers v. Marx & Haas Clothing Co., 334 Mo. 632, 66 S.W.2d 526; Wheat v. Alderson, 234 Mo.App. 346, 130 S.W.2d 650, 651. The negligence upon which this action is now based, since the discharge of defendant Cunningham, is the alleged negligent failure of Coats to maintain, manage, control and operate his GMC truck in a safe manner as required by the law. If the proof herein failed to establish any conspiracy upon the part of defendant Dalton company for Coats to operate his truck without a PSC permit and without other compliance with the statutes and regulations cited, then no case has been made against defendant Dalton Company. It was the plaintiff's burden clearly to establish such conspiracy to entitle him to recover from the Dalton company.

■ To prove that the Dalton company conspired with Coats to operate the latter's truck without a PSC permit and other compliance with the vehicle law, it certainly was essential to prove (as pleaded) that the Dalton company had knowledge of the fact that Coats did not have such a permit and had not complied with the other statutory requirements in question, and knew that Coats was thus operating his truck unlawfully. Such proof must be clear and convincing. Woosley v. Wells, Mo.Sup., 281 S.W. 695. Plaintiff points out that the Dalton company is presumed to have known the law. But granting that principle, it does not follow that a person is presumed to know the essential facts that make such law applicable to a given case or situation. Plaintiff also contends that conspiracy may be established by circumstantial evidence. This is correct. Wooldridge v. Scott Coun-

ty Milling Co., Mo.App., 102 S.W.2d 958, 965.

■ We find no direct evidence to the effect that the president, superintendent or any other officer, employee or servant of the Dalton company knew that Coats did not possess a PSC permit to operate it or had not otherwise complied with the requirements of the statutes and regulations pertaining to such operation. On the contrary, representatives of the Dalton company, called by both plaintiff and defendants, when asked directly regarding such knowledge denied any such knowledge.

The sum and substance of the circumstantial evidence as to the knowledge on the part of the Dalton company that Coats was operating the truck in question without compliance with the vehicle law referred to, was that the superintendent and other employees of the Dalton company had opportunity at times when said truck arrived at its yards and was being weighed, to ascertain that it was a truck of more than 1½ ton capacity; to see that it did not contain on the side of its cab the data required by the law and regulations; and that it was being used for the transportation of materials of the Dalton company over the highways of Missouri. It is true that the superintendent of the Dalton company had seen the PSC permit number and other such data on some other trucks, but he testified that he thought such requirements did not apply to dump trucks, hauling sand in the locality, and had once been so informed by a highway patrolman. We are of the opinion that such circumstantial evidence is not sufficient to establish knowledge on the part of the Dalton company of any such violation of the motor carrier statutes and regulations as claimed, essential to prove the conspiracy pleaded.

That such knowledge on the part of the alleged conspirator of such violation of the vehicle law is essential in such cases as this, is made clear by the few decisions of this state dealing with that issue. Plaintiff relies greatly on Wooldridge v. Scott County Milling Co., supra. The evidence in that case was that the owner of the truck pro-

tested to the shipper that it was unlawful for him to haul the load without a permit, and that the shipper, nevertheless, directed him to proceed to do so, and said that if the hauler were arrested or stopped by a patrolman the shipper would get him out of trouble as he had done on previous occasions. There was further evidence in that case that the reason the shipper employed the hauler was that he could get the service cheaper than he could by railroad or by common carrier trucks. It was held therein that such evidence was sufficient to establish a conspiracy between the shipper and the owner to operate the truck unlawfully, and that the negligence of the truck owner was imputed to the shipper. See, also, companion cases of Kneezle v. Scott County Milling Co., Mo.App., 113 S.W.2d 817; Jackson v. Scott County Milling Co., Mo.App., 118 S.W.2d 1054.

Plaintiff also cites Rainer v. Western Union Tel. Co., Mo.App., 91 S.W.2d 202. In that case, the evidence was that the manager of the shipper assisted in loading the merchandise and knew that the hauler had no permit from the PSC of this state to transport merchandise over the highways of Missouri.

In Wheat v. Alderson, supra, also cited by plaintiff, an automobile dealer had sold a new car to a customer and took in trade an old one. It was charged that they conspired to permit the customer to transfer his old license to his new car, which was done. Subsequently, there was an accident due to the negligence of the customer. It was sought to hold the dealer jointly liable on the ground of a conspiracy entered into with the purchaser for the operation of the new car in violation of the statutes pertaining to vehicle licenses. Knowledge on the dealer's part that the old license was transferred to the new car was not established. It was held that no case was made against the dealer, and the Wooldridge case, supra, was distinguished in that respect.

It is our conclusion that the court in the instant case did not err in setting aside the verdict and judgment as to defendant Dalton Coal and Materials Company and entering judgment in its favor.

■ Turning next to the appeal by defendant Coats, his first assignment of error is that the court erred in refusing to set aside the judgment as to him because the verdict was in favor of his agent and employee Cunningham. His contention is that the petition is based on the respondeat superior theory, wherein damages were claimed which were caused by the sole negligence and carelessness of the defendant Cunningham. It is true that the petition contains allegations that the collision and injuries were caused by the negligence of Coats, acting by and through Cunningham, his agent, servant and employee, but that is not an allegation that Cunningham's negligence was the *sole* cause of the collision. The petition elsewhere avers that the vehicle was in the sole and exclusive possession and control of "the defendants"; that it was the duty of "the defendants to maintain said motor vehicle and all parts thereof in a safe condition * * * at the time and place of the said collision"; that "defendants carelessly and negligently maintained, managed, controlled and operated said GMC truck so that the left front wheel of the same came off"; that "as a direct and proximate cause of the carelessness and negligence of the defendants aforesaid, said GMC truck was caused to strike and collide with the plaintiff's Reo truck and trailer"; that the personal injuries and the damages to the personal property of plaintiff was the result of the negligence of "the defendants". Such allegation of control of his truck by Coats does not mean physical control, but refers to the right of control. Maxie v. Gulf, M. & O. R. Co., 356 Mo. 633, 202 S.W.2d 904, 911. Under such general allegations of negligence on the part of both Coats and his employee, it cannot be said that the petition would preclude a judgment against Coats unless it included his employee Cunningham. Neither did the evidence nor plaintiff's instructions require a judgment in favor of Coats if in favor of Cunningham.

It was said by the Supreme Court in Devine v. Kroger Grocery & Baking Co., 349

Mo. 621, 162 S.W.2d 813, 817: ."'If the liability of the master is not predicated solely upon the negligence of the employee in whose favor a verdict has been found, but upon the negligence of another employee, or that of the employer himself, a verdict against the employer is not inconsistent. A verdict in favor of an employee does not bar recovery against the employer where the latter has himself been guilty of acts on which, independently of acts of the employee, liability may be predicated.'" See, also, Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304, 308.

 Defendant Coats next contends that the judgment against him should be set aside because plaintiff failed to make a submissible case of res ipsa loquitur against him, having failed to negative the inferences that the cause of the accident may have resulted from a latent defect or one of such recent existence as to afford no reasonable opportunity for discovery. It is the character of the accident, rather than the fact of the accident that determines whether the res ipsa loquitur doctrine applies. Defendant Coats argues that evidence of the wheel coming off, that the truck veered into plaintiff's lane and a collision occurred, does not negative the inferences that the wheel may have come off due to latent defects or defects so recent as to prevent discovery. Under the evidence Coats had the control or right of control over his truck; it was his statutory duty to maintain it in a condition safe for travel; he had superior knowledge or means of knowledge of its condition, and under the law he was required to exercise the highest degree of care in its operation on the highway. He insists that the attendant facts in a res ipsa loquitur case must exclude any other hypothesis than defendant's negligence. He cites Removich v. Bambrick Bros. Const. Co., 264 Mo. 43, 173 S.W. 686, L.R.A.1917E, 233; Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702; and Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13. All of these cases have been overruled to the extent that they so hold. Cruce v. Gulf, Mobile & O. R. Co., 358 Mo. 589, 216 S.W.2d 78. In the latter case it is said, 358 Mo. at page 594, 216 S.W.2d at page 81: "In a res ipsa loquitur case a plaintiff is not required to present evidence to overthrow every reasonable theory of nonliability on part of the defendant. The facts proven must, however, justify an inference of negligence." The court said the statements to the contrary in the above cases cited herein by defendant Coats were too broad and should be modified so as not to require exclusion of every other hypothesis than defendant's negligence. The Supreme Court had previously said in Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S.W.2d 693, 701: "The attendant facts must be such as to raise a reasonable inference of defendant's negligence but not necessarily such as to exclude every other inference. The jury must draw the inference of negligence from the facts proven, and it must be a reasonable one".

In Mackler v. Barnert, Mo.App., 49 S.W.2d 244, 245, 246, it was held that the inference of the driver's negligence in driving his car off the highway and into an embankment, thereby encountering or creating dangers, was not dependent upon whether the person injured thereby was in the automobile or in its pathway and that: "Surely, this extraordinary performance is ample to give rise to a presumption of negligence on the part of defendants in the operation of the automobile. Whether or not the defendants' version of the facts, with respect to the locking of the wheels or steering device, resulting in the accident, exculpates them, was for the jury." The above quotation was approved in Tabler v. Perry, 337 Mo. 154, 167, 85 S.W.2d 471.

In a similar situation in Philibert v. Benjamin Ansehl Co., 342 Mo. 1239 at page 1250, 119 S.W.2d 797 at page 802, wherein the plaintiff claimed injuries through the negligence of the defendant in causing or permitting a platform or shelf to fall upon him, the court said: "When defendant's witness Guitar was on the stand the defects of the platform were disclosed, but this did not require plaintiff to submit his case on specific negligence. It would have been

otherwise, had plaintiff's evidence disclosed the defects."

Under the authorities and under the evidence in this case, we believe and rule that the plaintiff's cause of action against defendant Coats on the res ipsa doctrine did not fail on the ground that his evidence did not negative the inferences, if any, that the causes were latent defects or so recent as to prevent discovery.

■ Defendant Coats's last assignment of error is that plaintiff's Instruction P–A was erroneous in that it submitted plaintiff's case on the res ipsa theory after plaintiff had introduced evidence of the specific cause of the accident. It is urged that evidence of the failure of Coats's driver to detect the defect on the wheel and that it "shimmied" and made a noise, and that he did not stop before the wheel came off, constituted proof of specific acts of negligence on the part of defendant Coats. Plaintiff testified that as the Coats truck approached, its left front wheel "kind of looked like" it wobbled, but he thought at the time that it was because of the tar from the center line. Glen Brown, a witness for plaintiff, was driving a third truck and when he met Coats's truck he noticed the left front wheel of Coats's truck was wobbling. There was evidence that if the bearings of the wheel are out of line the wheel will wobble and make a noise. Defendant Cunningham, called by the plaintiff, testified that just before the accident he had pulled his truck over to the center line of the highway to see if he could pass a vehicle in front of him and started to pull back further in his own lane when his truck suddenly veered to the north. He said he had noticed no vibration in the steering wheel, had heard no unusual noise, and that he had driven the truck on seventeen trips between Columbia and Rocheport without noticing anything wrong with the truck. There was no positive evidence on plaintiff's part that the bearings were defective before the accident and caused the spindle to break. There was evidence that unless there was wobbling, noise or smoke then there was no reason to anticipate trouble with the bearings.

Thus, even if there was positive evidence on plaintiff's part that the wheel was wobbling and made a noise, the failure of defendant Coats's driver to detect the same and to stop the truck was not clear and sufficient proof of the specific negligence directly resulting in the later loss of the wheel. The fact remains that plaintiff's evidence left the true cause of the accident in doubt and not clearly shown. Belding v. St. Louis Public Service Co., 358 Mo. 491, 497, 215 S.W.2d 506. It was, therefore, no error to submit the plaintiff's cause as against defendant Coats on the res ipsa doctrine. Judgment affirmed. All concur.